Gayle Lee JONES, Appellee,

v.

The STATE of Texas, Appellant.

No. 233–86.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 25, 1987.

Pete Gilfeather, Fort Worth, for appellant.

Jorge A. Solis, District Atty., J. Mark Westenhover and Sara A. Fauls, Asst. Dist. Attys., Abilene, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Gayle Lee Jones was convicted, following a jury trial in the County Court, of driving while intoxicated, pursuant to Tex.Rev.Civ. Stat.Ann. art. 6701*l*–1(b) (Vernon Supp. 1987). Pursuant to her election, the trial court assessed punishment at thirty days' confinement and a fine of $300. The imposition of confinement was suspended and appellant was placed on probation for a period of twenty-four months. On direct appeal, the Court of Appeals for the Eleventh Supreme Judicial District of Texas reversed. *Jones v. State*, 703 S.W.2d 391 (Tex.App.—Eastland 1986, pet. granted).

We granted discretionary review, on the State's petition, to address an issue left open in our earlier opinions in *Forte v. State*, 707 S.W.2d 89 (Tex.Cr.App.1986) and *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986). Specifically, we will address whether the court of appeals was correct in holding that it was error under the Fifth Amendment to the United States Constitution to allow the jury to hear the oral statements made by appellant, and recorded on video tape, as she was performing sobriety tests while she was in custody of the Abilene Police Department subsequent to her arrest for suspicion of driving while intoxicated. Tex.R.App.P. 200(c)(2),(3). We will vacate the judgment of the court of appeals and remand the cause to that court with instructions.

Shortly after 9 P.M., on the evening of August 1, 1984, Gayle Lee Jones, hereinafter appellant, left her place of employment in Abilene and proceeded to a local tavern. During the next three hours, according to her uncontroverted testimony, she consumed two mixed drinks. Following an argument with her boyfriend, one

Thomas Erwin, appellant left the club and began the journey to her residence, also in Abilene. Erwin would later testify that appellant did not appear to him to be intoxicated at the time that she left the club, and that she did appear to have the normal use of her mental and physical functions at that time.

In route to her home, appellant was involved in an accident at the intersection of South Fourteenth and Danville Streets with an automobile occupied by one Harold McClelland and his wife. McClelland testified that appellant had stopped for a traffic light and then attempted to make her turn just as he entered the intersection. Appellant testified that she stopped for the light, waited for the oncoming traffic from both directions to clear and then attempted to make a turn at a time when there appeared to be no opposing traffic. Appellant was unaware of McClelland's presence at the intersection until the collision. Both cars then stopped at the scene of the collision.

The Abilene Police Department was made aware of the collision and Officers Scott and Spohn were dispatched to the scene. Appellant testified that she was in her car at the time the officers arrived and that Officer Scott initially conferred briefly with McClelland and then approached her car. Appellant testified that Officer Scott did not confer with her in any manner but immediately removed her from the car and placed her in handcuffs while informing her that she was under arrest for driving while intoxicated. Officer Scott testified that appellant was standing in close proximity to her car at the time that he arrived at the intersection and that he spoke with her for a period of seven to eight minutes, during which time he noted that she was unstable on her feet, her speech was slurred, her tongue was thick and her eyes were blood shot.

A second police unit, occupied by Officers Julie Komatz and Steve Rogers, was dispatched to the accident location to assist in directing traffic at the intersection. Rogers testified that he smelled a faint odor of alcohol on appellant's breath and that appellant swayed when she walked. Based upon the astute observations noted earlier, Scott placed appellant under arrest for driving while intoxicated and advised her of her constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant was then transported to the Abilene City Jail by Officers Rogers and Komatz. Officer Rogers testified that the smell of alcohol on appellant's breath, which he had earlier described as faint, was more noticeable in the police car during the drive to the jail.

■ Rogers indicated that it was standard practice to offer those arrested for suspicion of driving while intoxicated the opportunity to submit to a breathalyzer examination. If the suspect agreed to submit to a breathalyzer examination, that test was administered prior to a video tape examination of the suspect.[1] If the suspect did not agree to a breathalyzer examination, then the standard procedure was to submit the suspect to a video tape examination and then again offer the breathalyzer examination. All parties agree that appellant was offered the breathalyzer examination and that she refused to submit to such a test. Thus, Rogers called Officer Ricky Sanchez to administer a video tape examination as to appellant's sobriety.

Sanchez testified that he administered *Miranda* warnings to appellant prior to the video tape examination. At a pretrial hearing on appellant's motion to suppress the video tape examination, appellant testified that she requested an attorney prior to the start of the video tape examination, and again at the beginning of the video tape itself, and that both requests were denied by the officers present in the examination room.[2] Appellant objected to the introduc-

---

1. Authority for the *visual* recording of those arrested for violation of art. 6701*l*–1, supra, is found in Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1, Note § 24 of the 1983 amendatory act (Vernon Supp.1987). No argument is presented as to the validity of the statute itself, nor is the admission

of the *video* portion of the video tape contested in this Court.

2. The trial court concluded that appellant made a statement near the beginning of the video tape which the trial court described at the pretrial

tion of her video tape examination at the conclusion of Sanchez' testimony and prior to the introduction of the video tape into evidence. The trial court overruled appellant's objections and allowed the State to play the video tape before the jury, subject to his ruling regarding portions of the audio on the video tape following the point where appellant actually called an attorney.[3] The video tape examination apparently lasts for approximately sixteen minutes.[4]

Toward the latter portion of the video tape examination, appellant was allowed to use the telephone to contact an attorney and she succeeded in reaching one Quanah Parker. He apparently advised her not to take any action until he arrived at the city jail. Indeed, Parker did come to the Abilene City Jail, arriving approximately ten minutes after the phone call from appellant. Parker testified that he conferred with appellant for a period of approximately forty-five minutes and that in his opinion appellant did not appear to be intoxicated. Indeed, shortly after his arrival at the city jail, Parker offered to have appellant submit to a blood analysis to determine her

blood alcohol concentration. This offer was initially accepted and then declined by the officer in charge of the city jail at that point in time. Under advice from Parker, appellant again declined to submit to a breathalyzer examination. Parker then left to attempt to make arrangements for appellant's release while appellant was taken to complete the "booking" process.

Appellant presented four points of error to the court of appeals. That court sustained the second point of error and concluded that the trial court erred in overruling appellant's objection to the admission of the audio portion of the video tape made of appellant at the jail following her arrest for driving while intoxicated. *Jones v. State*, supra at 392. In so doing, the court specifically concluded that appellant requested an attorney before the video tape was made and that she also requested the opportunity to consult with her attorney at the very beginning of the video tape. *Id.* Allowing the jury to hear the audio portion of the video tape until the point at which appellant was actually allowed to telephone her attorney was thus held "error under

---

suppression hearing as " 'I think I want a lawyer' or some comment about how about an attorney." The trial court interpreted this comment to be equivocal and insufficient to invoke appellant's right to counsel pursuant to *Miranda v. Arizona*, supra.

3. The trial court ordered a portion of the video tape examination suppressed on the basis of the pretrial hearing. Specifically, the trial court ruled that after appellant had performed various physical and verbal exercises, supposedly designed to demonstrate sobriety, or the lack thereof, and was then allowed to use the telephone to call her attorney, any remaining audio portion of the video tape would not be played to the jury. However, the remaining video portion of the video tape was ruled admissible. This video portion was to be played to the jury without the accompanying audio portion of the video tape.

4. Tex.R.App.P. 50(d) provides:
"(d). Burden on Appellant. The burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal."
Appellant provided the court of appeals with a copy of the video tape here in issue. The State of Texas, as the party now seeking review, has

failed to include the video tape, or a copy or transcript thereof, in the record for review in this Court. Appellant's counsel has likewise elected to omit the video tape, or a copy or transcript thereof, from the material provided for our consideration. As the remainder of this opinion demonstrates, the content of that video tape is crucial to the final disposition of this appeal, and the absence of the video tape from the record before this Court necessitates our remand of this cause to the court of appeals for further proceedings.
Generally, we are bound by the record on appeal as presented to us. *Evans v. State*, 622 S.W.2d 866, 868 (Tex.Cr.App.1981); *McCambridge v. State*, 712 S.W.2d 499, 505–06 (Tex.Cr. App.1986). Indeed, appellant McCambridge's failure to include the video tape from his arrest and questioning by the Houston Police Department contributed in large measure to his inability to demonstrate "interrogation" within the meaning of *Miranda v. Arizona*, supra. *McCambridge v. State*, supra at 505–06.
However, given the facts of the instant cause and the posture in which they are presented, we will discuss the scope of the protections afforded by the Fifth Amendment in the driving while intoxicated situation, and remand the cause to the court of appeals for an examination of the events depicted on the video tape in light of the criteria set forth below.

the United States Constitution as interpreted by the Supreme Court of the United States." *Id.* at 392–93. As in *Forte,* the opinion of the court of appeals does not specifically mention a particular provision of the federal constitution upon which the court based its decision. *Forte v. State,* supra at 91; *Jones v. State,* supra at 393. However, given the court of appeals' citation of *Miranda v. Arizona,* supra, and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1977), it is clear that the decision was based upon the Fifth Amendment. Indeed, the State in its petition for discretionary review as well as its brief on the merits addresses only those cases dealing with the rights protected by that amendment.

Thus, the issue raised by this petition for discretionary review is similar to those addressed by this Court on numerous occasions, most recently in *McCambridge v. State,* supra, and *Forte v. State,* supra. However, the precise context in which that issue is addressed was left open in both of those cases.

This case is distinguishable factually from *McCambridge* in that the jury here was allowed to hear the audio portion of the video tape of appellant's video tape examination until such time as appellant was actually allowed to call her attorney. *McCambridge v. State,* supra at 505. Given the court of appeals' specific conclusion that appellant requested counsel prior to the start of the video tape examination and again at the very beginning of that examination, this case may well present the factual situation contemplated by this Court when it indicated that a different question would be presented if there were a request for counsel which went ignored, coupled with interrogation by the police officer administering the video tape examination. *McCambridge v. State,* supra at 506 n. 17. Indeed, as we shall discuss below, there was an apparent violation of the request for counsel, coupled with what may have been interrogation under *Miranda* and its progeny.

Additionally, we note that our present analysis proceeds under the Fifth Amendment to the United States Constitution and, of course, the relevant decisions of the United States Supreme Court, alone. Neither the State nor the appellant[5] raised any arguments before the court of appeals nor in this Court regarding the application of the comparable sections of the Texas Constitution. Accordingly, we express no view as to the resolution of the issue discussed herein under the Constitution and laws of Texas.

Finally, we note that the Fifth Amendment analysis involved here distinguishes this case from *Forte v. State,* supra. There Judge Campbell analyzed the *Wade-Kirby* line of cases[6] and concluded that the Texas video tape procedure utilized in driving while intoxicated cases is not a critical pretrial stage to which the right to counsel attaches under the Sixth Amendment. *Forte v. State,* supra at 91–92. The present analysis, proceeding as it does along a different route, not surprisingly arrives at a different destination.

Naturally, our discussion begins with Chief Justice Warren's often quoted passage from *Miranda v. Arizona,* wherein he encapsulated the Fifth Amendment protection as follows:

"Our holding will be spelled out with some specificity in the pages which fol-

---

**5.** Appellant, in her reply brief on the merits in this Court does attempt to invoke sections of the Texas Constitution, in addition to the federal constitution, to rebut the State claim of error by the court of appeals. This state constitutional claim was neither briefed nor discussed by either party in the court of appeals, and was not a basis upon which that court arrived at its decision in this cause. Additionally, the state constitutional claim was not raised in the petition for discretionary review filed by the State nor in the response to the State's petition for discretionary review filed by appellant. Thus this state constitutional claim is not properly before us and will not be addressed.

**6.** Specifically discussed were *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

low but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

*Miranda v. Arizona*, supra 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. In a footnote, the Court indicated that the concept of "custodial interrogation" was what it had meant in its decision in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), when it established restrictions on questioning a suspect out of the presence of counsel after the police investigation had become "focused" on the suspect. However, "focus" is not necessarily equivalent to "custody." *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

 Custodial interrogation occurs, and thus *Miranda* warnings are required, when questioning takes place in a prison setting during a suspect's term of imprisonment on a separate offense, *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), when questioning occurs in an individual's home after he has been arrested and is no longer free to leave, *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), and, of course, when a suspect is "picked up" on less than probable cause, taken to police headquarters in a police car and subsequently questioned in an interrogation room, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, the Court has cautioned that a non-custodial situation is not converted into one in which *Miranda*, supra, applies in the absence of a formal arrest or restraint on freedom of movement merely because an appellate court concludes that the questioning occurred in a "coercive environment." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977).

Indeed, the *Mathiason* Court noted that any questioning by police will have coercive aspects to it, simply by virtue of the police officer's role in the law enforcement system. Police are not required to give *Miranda* warnings to everyone whom they question; rather, the warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

Having concluded that without proper safeguards the process of incustody interrogation of persons accused or suspected of crime contains inherently compelling pressures which work to undermine an individual's will and compel him to speak where he would not otherwise do so freely, the *Miranda* Court held that the Fifth Amendment is available to protect persons "in all settings in which their freedom of action is curtailed in any significant way." *Miranda v. Arizona*, supra 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. After delineating the now familiar procedural safeguards, the Court clearly stated that once an individual has shown that he intends to exercise his Fifth Amendment privilege any statement taken after the invocation of that privilege cannot be other than the product of compulsion, whether subtle or otherwise. *Id.* at 474, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 723. The necessity of honoring the request to discontinue further questioning was emphasized with unmistakable clarity:

"Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent.

\* \* \* \* \* \*

If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. This Court has always set high standards of proof for the waiver of constitutional rights, and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

\* \* \* \* \* \*

[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

*Id.* at 473–75, 86 S.Ct. at 1627–28, 16 L.Ed. 2d at 723–24. (Citations and quotation marks omitted.)

Later cases have clarified the scope and breadth of the *Miranda* protections. Elaborating on the protections spelled out in *Miranda,* supra, the Court has explicitly held that once an accused has expressed a desire to deal with the police solely through counsel, the accused is not subject to further interrogation until counsel has been made available to the accused unless the accused himself initiates the further communication, exchanges or conversations with the police. *Edwards v. Arizona,* supra 451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. Appellant in the instant cause argued at the hearing on her motion to suppress and again at trial on the merits that she invoked her right to counsel in clear and unequivocal fashion both before the video tape examination began and again at the start of that video tape examination. The court of appeals specifically agreed with both contentions. *Jones v. State,* supra at 392.

Moreover, sensing that the police misconduct cataloged in the *Miranda* opinion itself was still much in evidence some fifteen years after that landmark decision was handed down, the Court strongly indicated that additional safeguards are necessary once the accused invokes his right to counsel. *Edwards v. Arizona,* supra 451 U.S. at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. Thus, when an accused has invoked his right to have counsel present during the custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. *Id.* at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. In appellant's case it would not behoove that State to suggest that appellant may have waived her *Miranda* protections by continuing to submit to the video tape examination after she had invoked her right to counsel, as such behavior cannot constitute the voluntary, knowing and intelligent relinquishment or abandonment which is the *sine qua non* for relinquishment of a constitutional right. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–82 (1975); *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439–40 (1977); *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758–59, 60 L.Ed.2d 286, 293–94 (1979); *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197, 211–13 (1979); *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378, 385 (1981). This is manifestly apparent in light of the court of appeals' conclusion that appellant requested counsel both before the video tape examination and again at the very beginning of that examination, *Jones v. State,* supra at 392, particularly when these conclusions are viewed in light of the uncontroverted fact that appellant actually contacted an attorney when she was *first* given the opportunity to do so by the Abilene Police.

The constitutional rule requiring that once an accused has requested the pres-

ence of counsel any further contact with the police must be initiated by the accused, was considered to be of sufficient importance for the Supreme Court to give *Edwards,* supra, retroactive application to those cases pending on direct appeal at the time that *Edwards* was decided. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). In deciding whether the *Edwards* decision should be given retroactive application, the Court examined its earlier holding in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), and noted, inter alia, that a Fifth Amendment violation may be more likely to affect the truth-finding process than a Fourth Amendment violation. *Shea v. Louisiana,* supra at 59, 105 S.Ct. at 1070, 84 L.Ed.2d at 46–47. Thus it would appear manifestly apparent that the rule established in *Miranda,* supra, and *Edwards,* supra, is intended to apply in all situations involving custodial interrogation, and that this rule is indeed a constitutional mandate firmly rooted in the Fifth Amendment, made applicable to the States through the mechanism of the Fourteenth Amendment.

This is not to say, of course, that the protection afforded by *Miranda,* supra, and *Edwards,* supra, is absolute and cannot be waived through the voluntary action of the individual accused of criminal activity. Once the procedural safeguards outlined in *Miranda* have been complied with and the individual has been advised of the full panoply of constitutional protections afforded him in the custodial interrogation situation, those rights may indeed be waived. However, as noted above, the State will bear the heavy burden of showing that such waiver was both knowing and voluntary.

The right to counsel has been held to have been waived when an individual who had received his *Miranda* warnings stated that he did not wish to have an attorney present and then consented to a polygraph examination, following which he again received *Miranda* warnings and then made inculpatory statements to investigators from the Army's Criminal Investigation Division. *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). The per curiam opinion in *Wyrick,* expressing the views of seven members of the Court, clearly states that by consenting to the polygraph examination, Fields not only initiated the "meeting" with the investigators, he initiated the interrogation itself. *Id.* at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 218. Thus the Court concluded that Fields waived not only his right to be free of contact with the authorities in the absence of his attorney, but also his right to be free of interrogation about the crime of which he was suspected. *Id.*

▮ Similarly, although an individual who has been arrested and has received his *Miranda* warnings has expressed a desire to be provided with counsel, he may nevertheless waive that constitutional right by initiating further contact with the authorities. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Bradshaw, like Fields, initiated conversation with the individuals investigating the crime of which he was suspected, consented to submit to a polygraph examination and then offered inculpatory statements to those authorities when they indicated that he had not been truthful in the polygraph examination. *Id.* at 1041–43, 103 S.Ct. at 2832–34, 77 L.Ed.2d at 409–11. Stressing that Bradshaw's statement to the police ("Well, what is going to happen to me now?") was not merely a necessary inquiry arising out of the incidents of the custodial relationship, such a request for water or the use of the telephone, the Court concluded that Bradshaw had evidenced a "desire for a generalized discussion about the investigation." *Id.* at 1045–46, 103 S.Ct. at 2834–35, 77 L.Ed.2d at 412–13. Both *Bradshaw* and *Fields* are clearly distinguishable from appellant's situation in that appellant clearly did not request the video tape examination to which she was subjected after her request for counsel went ignored.

▮ Moreover, we readily agree with the court of appeals implicit holding that appellant's statement, "I think I want a lawyer," was a clear and unequivocal assertion of her right to consult with counsel prior to

any questioning.[7] When Steven Smith was told that he had the right to consult with a lawyer and to have the lawyer present with him while he was being questioned, he responded "Uh, yeah. I'd like to do that". *Smith v. Illinois*, 469 U.S. 91, 93, 105 S.Ct. 490, 491, 83 L.Ed.2d 488, 492 (1984). Instead of terminating the questioning at that point, the police officers read Smith the remainder of his Miranda rights, and then pressed him to answer their questions regarding his role in a robbery. Smith made incriminating statements during the course of the interrogation, interspersed with renewed requests for counsel. *Id.* at 93–94, 105 S.Ct. at 491–92, 83 L.Ed.2d at 492–93. After noting that both the Illinois Appellate Court for the Fourth District and the dissent in the Illinois Supreme Court found the request for counsel clear and unequivocal, the Supreme Court stressed that the inquiries as to the invocation of the right to counsel and the waiver of that right are entirely distinct and must not be blurred by merging them together. *Id.* at 97–98, 105 S.Ct. at 494–95, 83 L.Ed.2d at 494–95. The Court further emphasized that *Edwards*, supra, set forth a bright line rule, under which *all* questioning must cease once an accused requests counsel. (Emphasis in original) *Id.* at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 495. The Court concluded in noting that it was not attempting to establish criteria under which a request for counsel would be held ambiguous or equivocal, but rather that an accused's *post request* responses to further interrogation could not be used to cast retrospective doubt on the clarity of the initial request for counsel. (Emphasis in original) *Id.* at 100, 105 S.Ct. at 495, 83 L.Ed.2d at 496.

The State has not directed our attention to anything in the record which undermines the clarity of appellant's initial request for counsel. Indeed, the State has failed to address the issue of appellant's request altogether, other than the argument that appellant's request was not entitled to be honored during the initial portion of the video tape interview. While we do not wish to embark on a series of examinations

regarding whether a particular statement is or is not sufficient to invoke the right to counsel in a particular situation, we certainly agree with the court of appeals that appellant's statement here is clear and unequivocal.

Thus, we hold that appellant enjoyed the full panoply of rights delineated in *Miranda*, supra, and *Edwards*, supra, at the time of her arrest for suspicion of driving while intoxicated by the Abilene Police Department. Having timely and specifically invoked those rights in a clear and unequivocal fashion, it would be a violation of appellant's rights under the Fifth Amendment to subject her to custodial interrogation in the absence of counsel. The focus of our inquiry now shifts to an analysis of whether appellant was subjected to "custodial interrogation," as that term is defined by the Supreme Court, at the time of her video tape examination.

■ At the time of the video tape examination, appellant had already been arrested for driving while intoxicated and informed of her *Miranda* rights by Officer Scott. She had been taken to the city jail by Officers Rogers and Komatz, and had been "booked in," at least in part. And at the time her oral responses were recorded on video tape, appellant was being questioned in the video tape room in the presence of at least two police officers. Under the circumstances, it is obvious that appellant was either "in custody," or that she had been "deprived of [her] freedom of action in [a] significant way." *Miranda v. Arizona*, supra 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Cf. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

The second prong of our *Miranda* analysis is whether appellant was subjected to "interrogation" during the portion of the video tape which the jury was allowed to hear. Given our conclusion that she timely invoked her right to counsel and that this invocation was ignored by the police, any interrogation which was later displayed to

---

**7.** See note 2, *ante.*

the jury would require a reversal of her conviction.

The current Supreme Court definition of "interrogation" is set forth in the following language:

"The term "interrogation" under Miranda (sic) refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. * * * A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, * * * the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."

*Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980).

Final disposition of this cause requires only the application of the above quoted test to the specific questions posed to appellant, considered in conjunction with any answers or other responses which those questions may have elicited from her, by the officers of the Abilene Police Department as depicted on the video tape sobriety examination. Unfortunately, we are not in possession of that item, and the cause must be remanded to the court of appeals for such an analysis.[8] Thus we remand this cause to the court of appeals so that they may ascertain whether the police behavior depicted in the portion of the video tape which the jury was allowed to hear constitutes "interrogation." That is, whether the activity was that which the police knew or should reasonably have known was likely to have elicited incriminating responses from the appellant, or was simply activity normally attendant to arrest and custody. *Rhode Island v. Innis*, supra at 300–02,

100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–08; *Oregon v. Bradshaw*, supra 462 U.S. at 1045–46, 103 S.Ct. at 2834–35, 77 L.Ed.2d at 412–13.

The Supreme Court has recently reiterated confessions remain a proper element in law enforcement and that any statement given freely and voluntarily without any compelling influences is admissible in evidence. *Arizona v. Mauro*, 481 U.S. ——, ——, 107 S.Ct. 1931, 1936, 95 L.Ed.2d 458, 468 (1987) (Quoting *Miranda v. Arizona*, supra, and *Rhode Island v. Innis*, supra.) The Court then cautioned that in deciding whether particular police conduct is interrogation, (an appellate court) must be directed by the purpose behind the decisions in *Miranda* and *Edwards:* preventing government officials from using the coercive nature of confinement to extract confessions that ·would not be given in an unrestrained environment. *Id.* at ——, 107 S.Ct. at 1936–37, 95 L.Ed.2d at 468.

The decision of the court of appeals reversing appellant's conviction is vacated, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

McCORMICK, Judge, dissenting.

I dissent only to the remand of the case to the Court of Appeals. Pursuant to Rule 202(f), Tex.R.App.P., we should order the Clerk of the Court of Appeals to forward the recording in order that we may properly review the Court of Appeals' decision. Contrary to footnote 4 of the majority opinon, Rule 202, supra, does not place the burden on the State to have exhibits filed in the Court of Appeals forwarded to this Court. Rule 50(d), cited by the majority, applies to the original record on appeal from the trial court.

For these reasons, I respectfully dissent.

ONION, P.J., TEAGUE and MILLER, JJ., join in this dissent.

---

**8.** See note 4, *ante.*