

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00759-CR

Taforrest Donta **CHANDLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR7712B
Honorable Frank J. Castro, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: December 17, 2025

AFFIRMED

Appellant Taforrest Chandler appeals his conviction of aggravated robbery. A jury found him guilty and assessed punishment at fifty years imprisonment. Chandler raises four issues on appeal, contending the trial court erred by (1) admitting recordings of two unauthenticated 911 calls, (2) entering a judgment consistent with the jury's guilty verdict, which he contends was not supported by legally sufficient evidence, (3) admitting evidence obtained during custodial interrogation after he invoked his right to counsel, and (4) submitting an erroneous jury charge on

the mental state elements of aggravated robbery. Because we conclude the trial court did not abuse its discretion, the evidence supports the verdict, and there was no egregious harm, we affirm.

## BACKGROUND

On May 13, 2022, a masked man entered the Lone Star National Bank in San Antonio, pointed a handgun at employees, and demanded money. The robber fled with approximately $25,000.[1] Surveillance video showed the robber wearing a white T-shirt, black pants with white stripes, white shoes with black laces, a blue cap, and carrying a blue drawstring bag. A witness later saw a suspect matching this description get into a distinctive Dodge Charger about a mile away from the crime scene. Within hours, police traced the Charger to a nearby motel, where they observed appellant, Taforrest Chandler, discarding black pants with white stripes, white shoes with black laces, and a blue drawstring bag. Officers later recovered a handgun, a blue cap, and cash containing the bank's bait bills hidden in a field near the location where the suspect had gotten into the Charger. DNA testing linked Chandler to the recovered clothing. Chandler was arrested and charged with aggravated robbery. A jury found him guilty and assessed punishment at fifty years imprisonment.

## ISSUE ONE:   ADMISSION OF 911 CALLS

In his first issue, Chandler contends the trial court erred in admitting two 911 recordings over his objection.[2] He claims the State failed to properly authenticate the recordings and that they do not qualify as exceptions to hearsay. He also suggests that the State failed to establish a

---

[1] Estimates of the amount of money taken ranged from $17,000 - $30,000.
[2] At trial, Chandler objected to the admission of the 911 calls on both hearsay and confrontation clause grounds. On appeal, however, he offers no argument or authority as to a confrontation clause error. We therefore confine our analysis to authentication and hearsay.

predicate sufficient to qualify the recordings as business records under Texas Rule of Evidence 803(6).[3] We conclude the recordings were properly admitted.

We review the admission of evidence under an abuse of discretion standard. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). A trial court abuses its discretion when no reasonable view of the record could support its ruling. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)). However, if an evidentiary ruling is correct under any theory of law applicable to the case, we will uphold the decision. *Irsan v. State*, 708 S.W.3d 584, 619 (Tex. Crim. App. 2025), *reh'g denied* (Apr. 16, 2025).

Chandler claims the State failed to authenticate the calls under Texas Rule of Evidence 901(a) because San Antonio Police Department communications employee Rozalia Hubbs, the only sponsoring witness, did not personally handle either call, recognize the voices, or otherwise verify the participants' identities. According to Chandler, Hubbs could not establish the calls' authenticity because she was not the dispatcher who received them and she lacked personal knowledge of the recording process.

At trial, Hubbs testified that she was employed by the SAPD Communication Unit as a paralegal and custodian of records. Hubbs explained that her duties include maintaining all 911 and non-emergency communications for the SAPD. Hubbs further stated that each 911 call is automatically recorded by software that assigns a unique "call-for-service" number linked to an "incident detail report," or keycard, containing caller information and call-taker notes. Hubbs identified the CDs and keycards associated with the two calls at issue, testified that she retrieved and reviewed them the morning of trial, and verified that the recordings matched the corresponding

---

[3] To the extent Chandler suggests the State was required to satisfy Rule 803(6), that rule is inapplicable. *See* TEX. R. EVID. 803(6). The State did not offer the recordings as business records but as authenticated 911 calls under Rule 901. The trial court's ruling thus turned on authentication, not on a business-records predicate.

keycards by incident number, caller name, and address. The trial court overruled Chandler's authentication objection and admitted the exhibits.

Under Texas Rule of Evidence 901(a), the proponent of evidence must present evidence "sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a); *Angleton v. State*, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998). Courts traditionally provide a broad reading of Rule 901, allowing the jury to weigh the credibility of the evidence. *Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd).

Specific to 911 calls, Texas courts have repeatedly upheld the admission of such recordings when they are authenticated by testimony from custodians familiar with the automatic recording and retrieval process. *See*, *e.g.*, *Knight v. State*, No. 08-16-00123-CR, 2018 WL 3867570, at *4 (Tex. App—El Paso Aug. 1, 2015, no pet.) (mem. op., not designated for publication) (noting custodian's description of automatic recording and retrieval system established authenticity according to Rule 901 (a)); *Batteas v. State*, No. 02-05-00336-CR, 2006 WL 349709, at *6 (Tex. App. —Ft. Worth Feb. 16, 2006, pet. ref'd) (mem. op., not designated for publication) (concluding testimony of 911 records custodian satisfied Rule 901(a)); *Esnard v. State*, No. 05-02-01812-CR, 2003 WL 22332395, at *2 (Tex. App.—Dallas Oct. 14, 2003, no pet.) (not designated for publication) (finding 911 recording properly authenticated by custodian who explained recording and storage procedures); *Montoya v. State*, 43 S.W.3d 568, 570–71 (Tex. App.—Waco 2001, no pet.) (holding custodian's description of automatic recording system and confirmation that disk corresponded to incident met authenticity requirements of Rule 901(a)). Like the witnesses in these cases, Hubbs described the system's automatic recording process, the unique identifiers linking each call to its keycard, and her own retrieval and verification of the discs. The trial court therefore

acted within its discretion in concluding that the recordings were what the State claimed them to be.

Even if admission were erroneous, we conclude that any error was harmless. Non-constitutional evidentiary error warrants reversal only where it affects a substantial right. TEX. R. APP. P. 44.2(b); *Traylor v. State*, 660 S.W.3d 214, 222 (Tex. App.—San Antonio 2022, no pet.). The 911 recordings at issue were cumulative of other properly admitted evidence. They contained descriptions of the bank robber and of the vehicle the robber entered after he exited the bank. The video surveillance evidence from the bank, the bank employee testimonies and the officers' testimonies conveyed the same information contained in the calls. Given this overlap, there is no reasonable likelihood the recordings influenced the verdict to the extent that it affected a substantial right. *See Eggert v. State*, 395 S.W.3d 240, 244 (Tex. App.—San Antonio 2012, no pet.) (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App.1999).

Finally, because an appellate court may affirm a trial court's evidentiary ruling on any correct legal theory of law, the recordings were also admissible under both the excited-utterance and the present-sense-impression exceptions to the hearsay rule. *See* TEX. R. EVID. 803(1), 803(2); *Riveron v. State*, No. 04-22-00310-CR, 2024 WL 1543282, at *5 (Tex. App.—San Antonio Apr. 10, 2024, no pet.) (mem. op., not designated for publication); *Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.). Chandler's first issue is overruled.

ISSUE TWO: SUFFICIENCY OF THE EVIDENCE

In his second issue, Chandler claims that because there was no evidence conclusively identifying him as the person who robbed the bank, the evidence is legally insufficient to support the jury's verdict. Because circumstantial evidence is as probative as direct evidence and a

conviction may rest on it alone if it establishes guilt beyond a reasonable doubt, we find the evidence sufficient.

In conducting a legal sufficiency analysis, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 (1979); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). We defer to the jury's role as the sole judge of the weight and credibility of evidence, and we presume it resolved any conflicting evidence or inferences in favor of the verdict. *Id.*; *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Circumstantial evidence is as probative as direct evidence in establishing guilt, and the same standard of review applies equally to both. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016); *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

According to the Texas Penal Code, a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE § 29.02(a). A robbery becomes aggravated if, in addition to those elements of robbery, the actor uses or exhibits a deadly weapon. TEX. PENAL CODE § 29.03(a)(2). Thus, in this case, the State was required to prove that Chandler, (1) in the course of committing a theft, (2) intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death, and (3) used or exhibited a deadly weapon during the offense. Chandler does not dispute that a robbery occurred or that a firearm was used. Instead, his challenge focuses on identity: whether the State proved beyond a reasonable doubt that he was the person who committed the robbery.

The State introduced the bank's surveillance video and 911 recording detailing the bank robber's clothing. The bank robber was carrying a blue drawstring bag and wearing a white shirt, black pants with a white stripe, white shoes with black laces, a surgical mask and a blue cap. The bank manager, Lisa Garcia, testified that the robber pointed a handgun at her and demanded money, causing immediate fear of serious harm. Other bank employees corroborated this testimony. The robber left the bank on foot with approximately $25,000.

Within half an hour, the suspect is seen on video surveillance footage getting into a blue Dodge Charger with chrome rims at an apartment complex about a mile away. Another 911 caller described the car, it's out of state license plate, and was able to provide the license plate number. Responding officers corroborated the descriptions of the suspect and relayed that information over dispatch.

A short while later, officers traced and located the suspect vehicle at the OYO Motel. Crime scene investigators recovered a blue drawstring bag, black pants with a white stripe, white shoes with black laces and a surgical mask after they witnessed Chandler deposit these items in a trash can outside his motel room. Forensic testimony further linked Chandler to the seized clothing. A DNA analyst testified that DNA recovered from the seized items matched Chandler's with a random match probability of one in 484 octillions.

Investigators also recovered a pistol, a blue cap and almost $20,000 hidden in a field less than a mile from the bank. The State introduced the bank's bait-bill record, and officers testified that serial numbers on the cash seized from the field matched those listed on the bait-bill record. Together, these exhibits and witness accounts created a consistent evidentiary chain connecting Chandler to the offense.

Although the State's case rested largely on circumstantial evidence, such evidence is as probative as direct evidence and may alone establish guilt beyond a reasonable doubt. *Hooper v. State*, 214 S.W.2d 9, 13 (Tex. Crim. App. 2007). Here, the bank surveillance footage provided the visual description; the evidence from the motel matched that description; and the DNA results confirmed Chandler's connection to the recovered clothing. Each link in the State's evidence supported the next, creating a chain that could lead a jury to reasonably conclude that the same person who possessed the seized items was the person depicted in the surveillance video committing the robbery.

Viewing the evidence in the light most favorable to the verdict, a rational juror could find that Chandler, while in the course of committing theft, intentionally placed Lisa Garcia in fear of imminent bodily injury or death and used or exhibited a firearm. Accordingly, the evidence is legally sufficient to support each element of aggravated robbery, including Chandler's identity as the perpetrator. Chandler's second issue is overruled.

ISSUE THREE: ADMISSION OF INTERROGATION VIDEO

Chandler next contends that the trial court erred by admitting a body-camera recording of his custodial interaction with police at the scene of his arrest because he invoked his right to counsel. Chandler argues that his statement, "Take me to jail and I'm gonna call a lawyer," was a clear and unambiguous invocation that required all questioning to cease. The State responds that Chandler's remark was conditional and forward-looking, not a present request for counsel. The State further argues that any error in admitting the video was harmless because Chandler made no incriminating admissions after the alleged invocation. We agree.

Whether a defendant invoked the right to counsel is a legal question reviewed *de novo*. *See Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012). Although we defer to the trial court's

findings of historical fact, the determination of whether a particular statement was an unambiguous request for counsel is judged under an objective standard. *Id*. The inquiry is whether a reasonable officer in the same circumstances would have understood the statement to be a request for an attorney. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009).

The recording at issue shows Chandler sitting in the back of a patrol car following his arrest. After receiving and acknowledging his *Miranda* warnings, he denies involvement in any wrongdoing and continues conversing with officers. Roughly twenty-four minutes into the recording, Chandler states, "Go on and do what you do. Take me to jail and I'm gonna call a lawyer." Following this statement, the officers continue conversing with Chandler and he continues to deny doing anything wrong for several more minutes before the video ends.

In support of his contention that his statement was an unequivocal request for an attorney, Chandler likens his statement to those made in *Jones v. State*, 742 S.W.2d 398 (Tex. Crim. App. 1987); *Ochoa v. State*, 573 S.W.2d 796 (Tex. Crim. App. 1978), and *Goodnough v. State*, 627 S.W.2d 841 (Tex. App.—San Antonio 1982, pet. ref'd). In those cases, the courts found clear, contemporaneous requests for counsel during interrogation. *See Jones*, 742 S.W.2d at 405 (defendant said, "I think I want a lawyer" before questioning began); *Ochoa*, 573 S.W.2d at 799 (defendant told officers he would not sign anything until he talked to his lawyer); *Goodnough*, 627 S.W.2d at. 844 (defendant stated, "I might better talk to my lawyer before I give a statement."). Each of these requests tied the request for counsel to the ongoing interrogation.

By contrast, Chandler's statement was prospective and conditional. In cases more closely on point, courts from other jurisdictions have held that future-tense or deferred references to an attorney do not constitute an invocation of the right to counsel for purposes of custodial interrogation. *See, e.g.*, *U.S. v. Scarpa*, 897 F.2d 63, 68-70 (2d Cir. 1990) (concluding statement

"I don't have a lawyer, but I'm going to get a lawyer," was not an invocation because it was not a present request for counsel); *State v. Walker*, 276 Kan. 939, 947, 80 P.3d 1132, 1138 (2003) (finding statement, "That's why I can't wait to get over there [to jail] man so I can call a lawyer and tell him," was not an invocation). The same principle appears in *McNeil v. Wisconsin*, 501 U.S. 171 (1991) and its Texas counterpart *Pecina v. State*, 361 S.W.3d 68 (Tex. Crim. App.2012), which hold that a defendant may not pre-invoke counsel for future proceedings or for questioning that has not yet begun. *McNeil*, 501 U.S. at 178 (holding an invocation must apply to the present interrogation, not a future event); *Pecina*, 361 S.W.3d at 81 (concluding defendant's request for counsel did not apply during custodial interrogation because it was future oriented).

Chandler's remark, "Take me to jail and I'm gonna call a lawyer," fits within this category. It expresses an intent to seek legal advice after transport and booking, not a present desire for counsel's assistance during the interrogation. *See Mbugua v. Sate*, 312 S.W.3d 657, 665 (Tex. App. —Houston [1st Dist.] 2009, pet. ref'd) (concluding defendant's statement "Can I wait until my lawyer gets here" was ambiguous and conditional); *Dalton v. State*, 248 S.W.3d 866, 869-70 (Tex. App. —Austin 2008, pet. ref'd) (finding statement "Tell my friends to get me a lawyer," was not invocation because it was indirect and future-oriented). Further, after his statement, Chandler continued speaking with officers voluntarily; reinforcing the fact that he had not meant to end the exchange. Under these circumstances, a reasonable officer could view the statement as a deferred or future-tense comment rather than an immediate, unambiguous request for counsel. *See Pecina*, 361 S.W.3d at 80; *Hartwell v. State*, 476 S.W.3d 523, 531–32 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd).

Even assuming error, we would conclude that it was harmless. *See* TEX. R. APP. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). Chandler made no inculpatory

statements during the interrogation. In fact, the entirety of his recorded remarks were denials of guilt. Meanwhile, as previously noted, the State presented overwhelming circumstantial evidence linking him to the robbery, including surveillance footage, eyewitness testimony, physical evidence, and DNA evidence. Under these circumstances, the recording added little to the State's proof and did not likely influence the verdict. Chandler's third issue is overruled.

ISSUE FOUR: JURY CHARGE ERROR

In his final issue, Chandler contends that the trial court's jury charge erroneously stated the applicable culpable mental state for aggravated robbery by globally defining "knowingly" and "intentionally" instead of tailoring those definitions to the specific conduct elements of the offense. We agree, but we find no egregious harm.

A trial court's charge must tailor the mental state to the type of conduct alleged. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). Using the full statutory definitions of "intentionally" and "knowingly" without that tailoring can be misleading because not every offense involves all conduct elements. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995).

The Texas Penal Code recognizes three possible "conduct elements": the nature of a person's acts, the result of that act, and the circumstances surrounding it. *See* TEX. PEN. CODE ANN. § 6.03 (defining culpable mental states). This court has recognized that aggravated robbery contains all three conduct elements: causing or placing another in fear of bodily injury (a result of his conduct), the unlawful appropriation of property (the nature of his conduct), and the robbery itself is committed in the course of the commission of a theft (circumstances surrounding the conduct). *Fields v. State*, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999).

When all three conduct elements are implicated, the charge must "limit the definitions in the jury charge to the conduct element or elements of the offense to which they apply." *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.). The jury charge in this case included the statutory definitions for the mental states of intentionally and knowingly. However, the charge failed to instruct the jury as to which mental states pertained to each element of the offense. The charge was therefore erroneous.

Chandler concedes that trial counsel did not object to the charge. Accordingly, our review of the error is limited to a determination of egregious harm. *See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). Under the *Almanza* standard, unobjected to charge error warrants reversal only if the error was so serious that it deprived the defendant of a fair trial. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020); *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). Egregious harm is a demanding standard. It exists only when the record shows that the error affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.*; *Villarreal v. State*, 453 S.W.3d 439, 433 (Tex. Crim. App. 2015).

Although the charge in this case did not specify which mental state applied to which conduct element of the offense, the record does not show egregious harm. While aggravated robbery does involve all three conduct elements, not every case requires jurors to navigate those distinctions. The ultimate question is whether the jury was misled about how the mental states applied to the conduct that was actually at issue at trial. *See Cook*, 884 S.W.2d at 491; *Patrick*, 906 S.W.2d at 492.

Here, it was undisputed that the robbery occurred, that the robber was armed and that the bank employees were placed in fear. The defense theory was not that the robber lacked intent or that there was no threat of bodily harm, but that Chandler was not the robber at all. When identity

is the only contested issue, a definitional error about conduct elements cannot reasonably be said to have influenced the verdict. *See Love v. State*, 706 S.W.3d 584, 606 (Tex. App.—Austin 2024, pet. ref'd) (finding no harm where intent or knowledge was not a contested issue at trial); *Taylor v. State*, No. 05-01-00197-CR, 2003 WL 22449157, at *3 (Tex. App.—Dallas Oct. 29, 2003, no pet.) (not designated for publication) (refusing to find harm in failure to define mental state in relation to conduct element where the contested issue at trial was identity and not intent); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi–Edinburg 1989, no pet.) (noting erroneous submission of mental state definitions did not cause harm "[w]here no defense is presented which would directly affect an assessment of mental culpability").

Given that the disputed question was who committed the offense, not how it was committed or with what mental state, any error in the abstract portion of the charge was academic. We conclude that the charge, viewed as a whole, fairly guided the jury to their verdict. Chandler's fourth issue is overruled.

The judgment of the trial court is affirmed.

H. Todd McCray, Justice

DO NOT PUBLISH