**The STATE of Texas, Appellant,**

v.

**Diane Dell DAVIS, Appellee.**

**No. C14–89–00813–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 24, 1990.

Stacy Scofield, Bryan, for appellant.

Robert L. Orozco, Bryan, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal by the State of the trial court's order suppressing certain audio portions of the videotape taken of Diane Dell Davis after her arrest for the offense of Driving While Intoxicated. The trial court ordered suppressed the audio portion of the videotape from the point Davis invoked her constitutional right to terminate her interview with the police after her arrest. We reverse and remand.

We hold that the police questioning incident to the videotape sobriety test was "activity normally attendant to arrest and custody of a DWI suspect and not interrogation." Since there was an absence of police questioning calling for testimonial responses, the appellant's responses on the audio portions of the DWI videotape were admissible even after a proper invocation of her Miranda rights. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). This case is also controlled by a recent Court of Criminal Appeals opinion in *Jones v. State*, —— S.W.2d —— (Tex.Crim.App. delivered May 2, 1990) (not yet published).

In its sole point of error the State asserts the trial court erred in suppressing the audio portion of the DWI videotape from the point where appellee requested the interview be terminated. We agree, finding the trial court committed error.

Appellee, Davis, filed a Motion to Suppress certain audio portions of videotape prior to the commencement of jury selection. The trial court listened to the testimony of appellee, reviewed the videotape and heard extensive argument of counsel. The trial court then ruled to suppress the audio portion of the videotape from the point at which appellee invoked her constitutional right to terminate the interview after arrest.

The issue for this court to decide is whether an accused, after being placed in custody and asked to perform sobriety tests and respond to questions while being videotaped, should have the right to suppress the audio portion of that custodial videotape after he invokes one of his constitutional rights as set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

We have viewed and listened to the audio track of the videotape. The audio track of the videotape contains the police officer's instructions concerning how appellant should perform several sobriety tests and also the officer's reading of the Miranda rights to Davis. These rights were printed on a large board in the video room. Pursuant to the officer's instruction, Davis read aloud those rights printed on the board. Also recorded was the officer's inquiry of Davis as to whether she understood her rights and her responses.

When he asked her to perform a sobriety test Davis told the police officer several times that she wanted to terminate the interview. This request was a timely and

specific invocation of Davis' constitutional right to terminate the interview at any time. *Miranda v. Arizona, supra; Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

We must now determine whether Davis' statements in the videotape were the product of custodial interrogation. It is undisputed that Davis was in the custody of the police. The issue is whether she was under "interrogation" during the audio portion of the videotape.

Not all post-arrest police questioning can be classified as "interrogation." The *Rhode Island v. Innis,* definition, itself, expressly excludes certain police questioning and behavior.

> We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. *Rhode Island v. Innis,* 446 U.S. at 300–302, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–308 (1980).

We must now determine whether the police conduct in the instant case falls within the *Rhode Island v. Innis* definition of interrogation.

The Dallas Court of Appeals stated in *Chadwick v. State,* 766 S.W.2d 819 at 821 (Tex.App.—Dallas 1988), *aff'd* No. 264–89 (Tex.Crim.App. delivered May 2, 1990) (not yet published.)

> ... a suspect may be compelled to give physical evidence of his intoxication ... because physical evidence is not testimonial in nature ... we conclude that a recitation of the alphabet and counting backwards are not testimonial in nature because these communications are physical evidence of the functioning of appel-

lants mental and physical faculties. The performance of these sobriety tests shows the condition of a suspect's body. Any indication of intoxication comes from a suspect's demeanor, the manner in which he speaks, and whether he has the mental ability to perform the tests correctly.

We cannot agree that audio portions of sobriety test videos should be *per se* inadmissible following a request to terminate the interview. Legitimate reasons for their admission do exist. The audio portion of the tape serves as a general interpretive aid to the visual record. It also provides a physical exempler of the suspect's manner of speech at the time of arrest. A jury may use the quality of the suspect's speech as evidence of his degree of intoxication. Ability to enunciate words clearly can be highly probative of loss of "normal use of mental or physical faculties," which the State must prove under Art. 6701*l*–1(a)(2)(A), V.T.C.S. Similarly, a test of ability to read aloud can be probative in the case of a literate suspect. As long as the suspect's statements are not used for their truth but as circumstantial evidence from which the jury may infer the degree of intoxication, the attending officers could testify about the statements anyway. *Miffleton v. State,* 777 S.W.2d 76, 80 (Tex. Crim.App.1989) (holding that visual depictions of a suspect's appearance soon after arrest are admissible because officers could testify to the facts depicted.) If testimony about the statements would be admissible, it defies logic to exclude a properly attested mechanical recording of the same statements.

Additionally, an accompanying soundtrack allows a jury to hear the suspect's volunteered statements. Such statements have never been barred by *Miranda:*

> Any statement given freely and voluntarily without compelling influences is, of course, admissible in evidence ... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. *Rhode Island v. Innis,* 446 U.S. at 300, 100 S.Ct. at 1689, *quot-*

*ing Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630.

All of these considerations compel us to hold that audio tracks from DWI videotapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is *conduct the police should know is reasonably likely to elicit such a response.* Police requests that suspects perform the sobriety tests and directions on how suspects are to do the tests do not constitute "interrogation;" neither do queries concerning a suspect's understanding of her rights. If the police limit themselves to these sorts of questions, they are not "interrogating" a DWI suspect. *Jones v. State, supra.*

Applying the standard above to the facts in our case, we note that the police officer made no comments other than those necessary: 1) to inform Davis of her rights; 2) to determine whether Davis understood her rights; and 3) to instruct Davis concerning the sobriety tests. Further, the police officer's comments and questions were limited to those *normally attendant to the arrest and custody of a DWI suspect. Finally, the officer's conduct did not seek, nor was it likely to result in incriminating testimonial evidence.* We therefore hold that the police officer's conduct was not interrogation. We reverse the order of the trial court which suppressed the audio portion of the DWI videotape.