Elbert Ray **CHADWICK**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 05–88–00187–CR.

Court of Appeals of Texas, Dallas.

Dec. 30, 1988.

Rehearing Denied Jan. 25, 1989.

Warren N. Abrams, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before STEPHENS, STEWART and ROWE, JJ.

STEWART, Justice.

Elbert Ray Chadwick appeals his misdemeanor conviction for driving while intoxicated (DWI). The court assessed punishment at ninety days' confinement, probated for two years, and payment of a fine of $500. Appellant complains of admission into evidence of the audio portion of a videotape. Finding no merit in this contention, we affirm.[1]

In his second point of error, appellant contends that the trial court erred in admitting the audio portion of a videotape which allegedly contained incriminating questions asked after appellant invoked his right to counsel. A review of the video tape reveals the following. The officer gave defendant the DWI warnings prescribed in article 6701l –5, section 2(b) of the Texas Revised Civil Statutes (Vernon Supp.1987) regarding breath and blood tests. The offi-

cer then asked if defendant would take the breath test, and defendant replied, "not without my attorney present." The officer told appellant that the officers did not have to give [appellant] an attorney before the test although he could have one after the test. The officer then asked, "Do you want the test or not?" Appellant replied, "No sir." The officer then had appellant perform three "field sobriety" tests: the reading of the "Texas card," saying the alphabet and counting backward.

On appeal, appellant complains only of the tests requiring him to state the alphabet and to count numbers. Regarding these two tests, the tape reflects the following questions by the officer and appellant's answers:

Q. Can you say the alphabet?

A. I told you before when you stopped me I don't know the alphabet completely.

Q. You said part of it before—

A. Yes, sir, I can say part of it, but I don't know it all.

Q. Can you say what you know of the alphabet?

A. A,B,C,D,E,F,G,H,I,J,K,L,M,N,O,P,Q, R,S,T—W,X,Y,Z.

The officer then asked the defendant to count backward from 37 to 18. Appellant correctly counted backward from 37 through 15 and apparently started to ask if that was far enough. The officer said that appellant went further, that he had asked defendant to stop at eighteen.

## INTERROGATION

In *Jones v. State*, 742 S.W.2d 398 (Tex.Crim.App.1987), the court had before it the issue of whether the defendant's oral statements, recorded on tape as she was performing sobriety tests, were admissible before the jury. The court noted that the content of the videotape is crucial in determining whether defendant was subjected to "interrogation" after she invoked the right to counsel.[2] *Id.* at 407. The court relied

---

1. We have overruled appellant's four other points of error in an unpublished opinion, *Chadwick v. State*, No. 05–88–00187–CR (Tex. App.—Dallas 1988). .

2. It was undisputed in *Jones* that the defendant had invoked the right to counsel prior to taping and during the sobriety tests involved in that case. In our case, appellant refused the breath test unless his attorney was present but never

on the definition of "interrogation" in *Rhode Island v. Innis,* 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980), which, in substance, states that "interrogation" refers to express questioning and any other words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police knew or should have known were reasonably likely to elicit an incriminating response. *Jones,* 742 S.W.2d at 407; *see Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 308.

Because the *Jones* court did not have the tape before it, it remanded to the Court of Appeals for an analysis of whether, under the definition given of "interrogation," the specific questions posed to Jones, considered in conjunction with her answers or other responses which the officers' questions may have elicited from her, constituted "interrogation." The court formulated the issue as follows: "That is, whether the activity was that which the police knew or should reasonably have known was likely to have elicited incriminating responses from the appellant, or was simply activity normally attendant to arrest and custody." *Jones,* 742 S.W.2d at 407.

Applying these principles, we hold that the officer's questions in the instant case did not seek to elicit, nor did the appellant's answers constitute, the type of "incriminating responses" which are protected by the privilege against self-incrimination under either the state or federal constitutions. Historically, the privilege "was directed at the employment of legal process to *extract from the person's own lips* an admission of guilt, which would thus take the place of other evidence. That is, it was intended to prevent the use of legal compulsion to extract from the person a sworn communication of his knowledge of facts that would incriminate him." 8 WIGMORE, EVIDENCE § 2263 (1961). (Emphasis in original). These historical principles are reflected in our current law.

■ Thus, the state and federal privileges against self-incrimination only protect a suspect from *involuntary* testimonial incrimination. *Thomas v. State,* 723 S.W.2d 696, 704 (Tex.Crim.App.1986) (emphasis in original); therefore, a suspect may be compelled to provide *physical evidence* of his intoxication, *id.* at 704–05 (emphasis in original), because physical evidence is not testimonial in nature.

Likewise, we conclude that a recitation of the alphabet and counting backward are not testimonial in nature because these communications are physical evidence of the functioning of appellant's mental and physical faculties. The performance of these sobriety tests shows the condition of a suspect's body. Any indication of intoxication comes from a suspect's demeanor, the manner in which he speaks, and whether he has the mental ability to perform the tests correctly. These communications do not amount to an admission of guilt by appellant nor do they indicate a knowledge of facts which incriminate him or tend to incriminate him. 8 WIGMORE, EVIDENCE §§ 2260 & 2263. For these reasons, we hold that, in this case, these communications are not constitutionally protected under the privilege against self-incrimination.

In addition, the tape shows that the only words or actions by the officer that, arguably, he knew or should have known were reasonably likely to elicit an incriminating response were his directions and requests for performance of those sobriety tests, and the tape shows that appellant made no answers or other responses except those required to perform the tests requested. Under these facts, and based on the reasoning set out above, we hold that appellant was not subjected to "interrogation" under the test set out in *Jones,* but, to the contrary, the officer's actions here were simply activity normally attendant to the arrest and custody of a DWI suspect. *Jones,* 742 S.W.2d at 407.

### VOLUNTARINESS

■ Moreover, we conclude that appellant was not compelled to supply the re-

requested an attorney in relation to the three sobriety tests here. Nevertheless, we assume,

for purposes of this opinion, that appellant had invoked his right to counsel prior to these tests.

sponses he gave in performing the sobriety tests at issue. As stated above, both the state and federal privileges against self-incrimination prevent *involuntary* testimonial incrimination. *Thomas,* 723 S.W.2d at 704; therefore, the privilege only protects a defendant from providing evidence that is both testimonial *and* compelled. *Id.* at 703. Thus, assuming that appellant's responses are testimonial, we nevertheless hold that the videotape was admissible because the videotape reflects that, at the request of the officer, appellant performed the sobriety tests at issue voluntarily and without objection. There is no evidence that the officer forced appellant to perform them. Consequently, we hold that there was no violation of the privilege against self-incrimination. *See Millican v. State,* 143 Tex.Crim. 115, 157 S.W.2d 357, 358–59 (1942).

## HARM ANALYSIS

■ Finally, if admission of the audio portion of the videotape constitutes error, we hold that such error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). On the videotape, appellant did not appear intoxicated; he explained that he did not know the complete alphabet, yet he only omitted the "U,V" in his recitation; he correctly counted backward without undue hesitation, but continued counting to 15 instead of stopping at 18 as requested; and his manner of speech did not evidence intoxication. For these reasons, we hold, beyond a reasonable doubt, that the admission of the audio portions of the tape did not contribute to appellant's conviction or punishment. *Id.* Accordingly, we overrule appellant's second point of error. We affirm.

STEPHENS, J., files a dissenting opinion.

STEPHENS, Justice, dissenting.

Elbert Ray Chadwick appeals his conviction for driving while intoxicated. The court assessed punishment at ninety days' confinement probated for two years and a fine of $500. Chadwick asserts five points of error. I would sustain his second point

of error regarding the admission of the audio portion of the videotape. Accordingly, I would reverse the judgment of the trial court and remand the case for further action consistent with this dissent.

At 1:35 a.m., Friday, August 29, 1987, Dallas police officer Curtis Fowler observed Chadwick driving northbound on Greenville Avenue in Dallas, Texas. Officer Fowler testified that Chadwick changed lanes for no apparent reason without signal within a few blocks. Chadwick then lit a cigarette and stopped at a red light. After the light changed, Chadwick proceeded through the intersection. Officer Fowler then turned on the police lights of his unmarked car and pulled Chadwick over into a parking lot.

Officer Fowler approached Chadwick's car and asked to see his driver's license. At this time officer Fowler testified that he noticed a strong smell of alcohol and asked Chadwick to get out of his car and go to the back of the vehicle. While walking to the rear of the car, Chadwick balanced himself by leaning his hand on the car. Chadwick then failed to adequately perform several field sobriety tests. Officer Fowler determined that Chadwick was intoxicated and placed him under arrest. At the jail, Chadwick was videotaped while his rights were read to him and while performing several sobriety tests including reading a sample of text and reciting the alphabet. This videotape along with the audio portion were admitted at trial over Chadwick's objection that the audio portion, after he invoked his right to counsel, should have been excluded.

As a point of error, Chadwick asserts that the trial court erred in admitting the audio portion of the videotape containing incriminating questions and responses after he invoked his right to counsel. The issue which must be addressed is whether the safeguards of *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed. 2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 481–87, 101 S.Ct. 1880, 1883–86, 68 L.Ed.2d 378 (1981), were breached when the officers continued to question Chadwick after he had invoked his right to

counsel. In *Schmerber v. California*, 384 U.S. 757, 762–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966), the Supreme Court noted that the privilege against self-incrimination protected by *Miranda* and *Edwards* is a bar against compelling communications or testimony.

In the instant case, Chadwick was videotaped after requesting an attorney while being asked to read a portion of prepared text, to recite the alphabet, and to count backward. A review of the audio portion of the videotape reveals that at one point the questioning officer asked "why not [recite the alphabet], you did it before?" I would hold, that taken as a whole, the questions asked Chadwick were tantamount to custodial interrogation which was calculated to require Chadwick to testimonially incriminate himself. *See Jones v. State*, 742 S.W.2d 398, 407 (Tex.Crim.App. 1987), *on remand*, 745 S.W.2d 94, 96 (Tex. App.—Eastland 1988, pet. granted); *Mills v. State*, 720 S.W.2d 525, 526 (Tex.Crim. App.1986); *McCambridge v. State*, 712 S.W.2d 499, 501–07 (Tex.Crim.App.1986).

Having found error, I would then determine whether the error was harmless. The test which must be applied is whether this Court can conclude beyond a reasonable doubt that the error made no contribution to the conviction or punishment. TEX.R. APP.P. 81(b)(2). I cannot say beyond a reasonable doubt that the erroneous admission of the audio portion of the videotape made no contribution to the conviction. Because I would sustain Chadwick's second point of error, there would be no need to reach his remaining points of error. I would reverse judgment of the trial court and remand the cause for a new trial.