**Michael Timothy GASSAWAY, Appellant,**

v.

**The STATE of Texas.**

**No. 037–97.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 26, 1997.

Abe Factor, Fort Worth, for appellant.

Donald G. Davis, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

Michael Timothy Gassaway, henceforth appellant, was convicted by a jury of the offense of driving while intoxicated. Punishment was assessed by the trial court at 45 days, probated, and a $600.00 fine. The Dal-

las Court of Appeals in an unpublished opinion affirmed appellant's conviction. *Gassaway v. State*, No. 05–94–01898–CR, 1996 WL 616331 (Tex.App.—Dallas, October 25, 1996).

On direct appeal, appellant claimed that the jury should not have been allowed to view that portion of the DWI videotape showing appellant counting and reciting the alphabet during the course of taking field sobriety tests. Appellant contends that counting and reciting the alphabet was testimonial in nature and violates a defendant's Fifth Amendment rights. His sole authority for this position was the Fort Worth Court of Appeals' opinion in *Vickers v. State*, 878 S.W.2d 329 (Tex.App.—Fort Worth 1994, pet. ref'd), and its interpretation of the United States Supreme Court's opinion in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). The defendant in *Vickers* was required, on videotape, to recite the alphabet from "f" to "w" and to count backwards from ninety to seventy-five.

In *Pennsylvania v. Muniz*, the defendant was arrested for driving while intoxicated. Muniz, the defendant, was taken to a booking center where, without being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he was informed that his voice and his actions would be videotaped. Muniz was then asked seven questions regarding his name, address, weight, eye color, date of birth, and current age. Muniz was able to answer a majority of the questions correctly, stumbling over his address and age. He was also asked, but was unable to give, the date of his sixth birthday. Muniz was then asked to perform three field sobriety tests. The first test required that he count from one to nine, and the second test required him to count from one to thirty. He failed these two field sobriety tests. In addition, Muniz made several incriminating statements while performing these field sobriety tests. He was also asked to take a breathalyzer test. He refused to take the breathalyzer test at which time he was first advised of his *Miranda* rights. Subsequently, Muniz was convicted

at trial where both the video and audio portions of the tape were admitted. The Pennsylvania Superior Court reversed, holding that Muniz's answers to questions and his other verbalizations including his answer to the sixth birthday question were testimonial and therefore protected by the Fifth Amendment. The Pennsylvania Court concluded that the audio portion of the videotape should have been suppressed in its entirety. *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990).

On review, the United States Supreme Court held in *Pennsylvania v. Muniz*, that the first seven questions posed to the defendant were "for record-keeping purposes only" and therefore fall outside the protections of *Miranda* thereby not warranting the imposition of the Fifth Amendment. *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). In addition, the *Muniz* Court noted that any slurring of speech and other evidence of a lack of muscular coordination revealed by Muniz's answers to the officer's direct questions constituted nontestimonial responses for purposes of Fifth Amendment protection against self-incrimination. *Id.* 496 U.S. at 592, 606, 110 S.Ct. at 2645, 2652–53. However, the United States Supreme Court concluded that Muniz's response to the sixth birthday question was testimonial in nature basing its opinion on a recent case *Doe v. United States*, 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). In *Doe*, the United States Supreme Court held that "in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Id.* 487 U.S. at 211, 108 S.Ct. at 2348. The Court further concluded that the purpose of the privilege recognized by the Fifth Amendment and "[t]hese policies are served when the privilege is asserted to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government."[1] *Penn-*

---

1. See *Doe*, at 212–213, 108 S.Ct. at 2348–49 (quoting *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678 (1964)): "[T]he privilege is founded on 'our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisito-

*sylvania v. Muniz,* 496 U.S. at 595, 110 S.Ct. at 2647 (1990). The majority goes on to say that "the definition of 'testimonial' evidence articulated in *Doe* must encompass all responses to questions that, if asked of a sworn suspect during a criminal trial, could place the suspect in the 'cruel trilemma.'" *Id.* 496 U.S. at 597, 110 S.Ct. at 2648. "Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence, and hence the response (whether based on truth or falsity) contains a testimonial component." *Id.* 496 U.S. at 597, 110 S.Ct. at 2648. The United States Supreme Court concluded that when the officer asked Muniz if he knew the date of his sixth birthday, Muniz was confronted with this trilemma and that any response was considered testimonial and therefore should have been suppressed. *Id.* 496 U.S. at 599–600, 110 S.Ct. at 2649–50.

In its decision, the Supreme Court did not determine whether recitation of the alphabet or counting was testimonial and subject to suppression. However, prior to the *Muniz* decision, this Court held that reciting the alphabet and counting backwards were not testimonial in nature because these communications were physical evidence of the functioning of a defendant's mental and physical faculties. *Jones v. State,* 795 S.W.2d 171, 175 (Tex.Cr.App.1990); *Chadwick v. State,* 766 S.W.2d 819, 821 (Tex.App.—Dallas 1988), *aff'd,* 795 S.W.2d 177 (Tex.Cr.App.1990). Our decision in *Jones,* which pre-dates *Muniz,* is unaffected by the United States Supreme Court's holding in *Muniz.* In *Jones,* the defendant was arrested for driving while intoxicated and advised of her constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Gayle Lee Jones, the defendant, was then transported to the Abilene City Jail where she was asked to submit to a breathalyzer test. It was standard procedure at the jail to offer those arrested for driving while intoxicated the opportunity to submit to a breathalyzer examination. If the suspect agreed to submit to a breath test, that test was administered prior to a video tape examination of the suspect. If the suspect did not agree to a breathalyzer examination, then the standard procedure was to submit the suspect to a video tape examination and then again offer the breathalyzer examination. Jones refused to submit to a breathalyzer examination. At that time, officers administered *Miranda* warnings to the defendant and then administered a video tape examination as to defendant's sobriety. On the State's petition for discretionary review, this Court in *Jones v. State,* 795 S.W.2d 171 (Tex.Cr.App.1990), held that the audio portions of the sobriety video were not *per se* inadmissible. We concluded that there were:

"... legitimate reasons for their admission ..." *Id.* at 175. The audio portion of the tape serves as a general interpretive aid to the visual record. It also provides a physical exemplar of the suspect's manner of speech at the time of arrest. *Chadwick v. State,* 766 S.W.2d 819, 821 (Tex.App.—Dallas 1988), *aff'd,* 795 S.W.2d 177 (Tex. Crim.App.1990). A jury may use the quality of the suspect's speech as evidence of her degree of intoxication. Ability to enunciate words clearly can be highly probative of loss of "normal use of mental or physical faculties, ..." *Jones v. State,* 795 S.W.2d 171, 175 (Tex.Cr.App.1990).

Moreover, this Court in its opinion concluded that recitation of the alphabet and counting backwards were not testimonial because the communications were physical evidence of the functioning of the defendant's mental and physical faculties. *Id.* at 175.

■ In comparison, the United States Supreme Court in *Pennsylvania v. Muniz* narrowly tailored its opinion concluding that the response by Muniz to the sixth birthday question was testimonial in nature and there-

---

rial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates "a fair state-individual balance by requiring the government ...; in its contest with the individual to shoulder the entire load,"...; our respect for the inviolability of the human personality and the right of each individual "to a private enclave where he may lead a private life,"...; our distrust of selfdeprecatory statements; and our realization that the privilege, while sometimes "a shelter to the guilty," is often "a protection to the innocent."'"

fore should be suppressed. At no point within this opinion does the Supreme Court mention the recitation of the alphabet or counting backwards by a defendant during a field sobriety test. Therefore, in the case at bar, we reiterate our holding in *Jones* and *Chadwick* concluding that "a recitation of the alphabet and counting backwards are not testimonial in nature because these communications are physical evidence of the functioning of appellant's mental and physical faculties. The performance of these sobriety tests shows the condition of a suspect's body. Any indication of intoxication comes from a suspect's demeanor, the manner in which he speaks, and whether he has the mental ability to perform the tests correctly." *Jones v. State*, 795 S.W.2d 171, 175 (Tex.Cr.App. 1990); *Chadwick v. State*, 766 S.W.2d 819, 821 (Tex.App.—Dallas 1988), *aff'd*, 795 S.W.2d 177 (Tex.Cr.App.1990). Moreover, neither reciting the alphabet nor counting backwards involves an express or implied assertion of fact or belief. Gassaway, the appellant, was not confronted with the "cruel trilemma." His recitation of the alphabet and counting backwards was not compelled in violation of his right to be free from self-incrimination, therefore failing to trigger Fifth Amendment protection. Thereby, the judgment of the Court of Appeals is affirmed.

HOLLAND, J., concurs in the result.

OVERSTREET, J., dissented and filed opinion in which BAIRD, J., joins.

OVERSTREET, Judge, dissenting.

Appellant was convicted of driving while intoxicated and assessed punishment at 45 days confinement, probated, and a fine of $600. The Dallas Court of Appeals in an unpublished opinion affirmed appellant's conviction. *Gassaway v. State*, No. 05–94–01898–CR, 1996 WL 616331 (Tex.App.—Dallas, October 25, 1996). Appellant's ground for review asserts that his Fifth Amendment rights were violated when the jury was allowed to view that portion of the DWI videotape showing appellant counting and reciting the alphabet during the course of taking a sobriety test.

Appellant was arrested and taken to a Dallas County jail. There, without being advised of his Miranda rights, he was asked "book-in" questions and subjected to six sobriety tests: (1) the Six Flags Card; (2) recitation of the alphabet; (3) counting backwards; (4) the walk and turn; (5) the head tilt; and (6) the one legged stand. Appellant complains that the sobriety tests requiring him to recite the alphabet and count backwards elicited responses which were testimonial and thus violated his Fifth Amendment privilege against self-incrimination.

In *Miranda v. Arizona*, the U.S. Supreme Court determined that "prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. Unless a suspect "knowingly, voluntarily and intelligently" waives these rights, any incriminating responses to questioning may not be introduced into evidence in the prosecution's case in chief in a subsequent criminal proceeding. *Ibid*

The majority has characterized this case as one which is determinant on whether the answer given by the suspect is "testimonial" as the U.S. Supreme Court first articulated in *Doe v. United States* and later applied in *Pennsylvania v. Muniz*. The U.S. Supreme Court stated in *Doe* that "in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States* 487 U.S. at 210, 108 S.Ct. at 2347, 101 L.Ed.2d at 197 (1988). I disagree completely with the court's reasoning on this issue. The Fifth Amendment privilege against self incrimination extends to any evidence a person is compelled to furnish against himself.

When a person is taken into custody to be questioned, that person is arrested. Before any questions are asked of that person, they should be mirandized so that they are made aware of their constitutional rights. This case should not turn on a subjective test of what constitutes "testimonial" verbalizations, but rather should be governed by the objective standard of acquainting all arrestees

**52**

with their rights under *Miranda* before any questioning commences.

During the counting test, appellant failed because he was unable to count from 30 to 22. In fact he repeated the numbers 28 and 27. As well, he was unable to recite from d to x. The mistakes made during the count supported the inference that he was unable to do so because he was intoxicated. These responses were incriminating for purposes of *Miranda* even if he had counted and recited correctly. The Supreme Court has stated in *Innis* that "by 'incriminating response' we refer to any response whether inculpatory or exculpatory that the prosecution may seek to introduce at trial." *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The counting and recitation of the alphabet provided the state with factual evidence that the appellant was too intoxicated to do what was asked of him. In effect, this was evidence which the state used to convict him. By allowing a jury to view this evidence, any reasonable juror would assume that because the appellant could not complete the task, he was intoxicated. The majority states that "a recitation of the alphabet and counting backwards are not testimonial in nature because these communications are physical evidence of the functioning of appellant's mental and physical faculties." To believe that jurors would only give attention to the physical aspect of his speech is, I think, disingenuous.

Because appellant was not advised of his *Miranda* rights until after the videotaped proceedings at the booking center were completed, any verbal statements should have been suppressed. Accordingly, I would reverse the judgment of the trial court. As the majority finds differently, I respectfully dissent.

BAIRD, J., joins.