TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00832-CR







Mickey Atkins, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY


NO. 96-4074-2, HONORABLE ROBERT F. B. (SKIP) MORSE, JUDGE PRESIDING








 A jury convicted Mickey Dale Atkins of the offense of driving while intoxicated
("DWI") (1) and assessed punishment at 180 days in the county jail, probated for twelve months, and
a fine of $2,000, $1,000 of which was probated. In seven points of error Atkins claims the trial
court erred in its instructions and charge to the jury. (2) Although we disapprove of an instruction
given by the trial court, we will affirm the judgment of conviction.




BACKGROUND

 On August 10, 1996, Trooper Eric Hansen of the Texas Department of Public
Safety (the "DPS") initiated a traffic stop of Atkins around 2 a.m. in Williamson County. Trooper
Hansen testified to a number of traffic violations that prompted the stop and created suspicion that
Atkins was intoxicated: Atkins sat too long at a blinking red light, drove 70 mph in a 55 mph
zone, drove outside the boundaries of his lane, and changed lanes without signaling. After
stopping Atkins, Trooper Hansen asked Atkins to get out of the vehicle and to show his driver's
license. Trooper Hansen testified that Atkins had a "very strong" odor of alcohol. Trooper
Hansen also testified to slurred speech and a sway in Atkins's posture as he stood. Atkins
indicated he had been at a poker party and had consumed "about three beers." Atkins further
indicated that he had only slept about four hours in the last twenty-four hours, and thus felt very
fatigued.

 Trooper Hansen asked Atkins to perform a series of field sobriety tests: the
Horizontal Gaze Nystagmus ("HGN") test, (3) the walk-turn test, the one-legged test, and a recital
of the alphabet. The first three tests comprise the standardized field sobriety tests generally
performed by troopers of the DPS, and Trooper Hansen was certified to perform these tests. The
alphabet test was used by Trooper Hansen because he felt it provided a reliable additional indicator
of intoxication. Trooper Hansen testified that Atkins failed all six indicators of the HGN test,
failed to follow proper instructions and was unsteady on the walk-turn test and one-legged test,
and became confused during a recitation of the alphabet. Trooper Hansen then arrested Atkins
for DWI.

 Because Atkins refused a breath test, the State built its case at trial from a videotape
of the stop and the testimony of Trooper Hansen. Atkins countered with witness testimony from
his wife and a colleague that Atkins's behavior on the videotape was due to fatigue rather than
intoxication. Before the jury retired, Atkins objected to the jury charge that instructed the jury
upon the synergistic effects of fatigue and alcohol; the objection was overruled. The jury returned
a verdict of guilty for the charge of DWI.


DISCUSSION

 This case concerns the propriety of a jury charge instructing the jury about the
possible synergistic effects of fatigue and alcohol. (4) The instruction stated: 


You are instructed that if a Defendant allows his physical condition to deteriorate
to such an extent that he thereby makes himself more susceptible to the influence
of alcohol than he otherwise would have been and by reason thereof he becomes
intoxicated by the introduction of alcohol into his body, he would be in the same
position as though his intoxication, if any, was produced by the use of alcohol
alone and you find facts of the foregoing beyond a reasonable doubt.



(emphasis added). In seven points of error, Atkins claims the trial court erred in its jury charge
because: (1) the instruction allowed consideration of Atkins's physical condition, and thus violated
the statutory definition of "intoxication"; (2) the instruction allowed consideration of Atkins's
physical condition, which reduced the elements of the offense and shifted the State's burden; (3)
there was no evidence to support the submission of the instruction; (4) the instruction was
misleading and ambiguous; (5) the instruction introduced an additional and unauthorized element,
and failed to provide for the necessary mens rea; (6) the instruction constituted an impermissible
comment on the weight of the evidence; and (7) the instruction's definition of "intoxicated" was
unauthorized by the Texas Penal Code. Before addressing the specific points of error, some
general discussion is necessary.

 The Texas Penal Code defines "intoxicated" as "not having the normal use of
mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those substance, or any other substance
into the body; or having a blood alcohol concentration of 0.10 or more." Tex. Penal Code Ann.
§ 49.01(2) (West 1994). Thus, the statute provides for either an objective standard (.10 blood
alcohol concentration) or a subjective standard (5) (impaired mental or physical faculties by reason
of introduction of alcohol) to determine intoxication. Because Atkins refused a breath test, the
State was required to prove Atkins was intoxicated according to the more subjective standard that
he did not have the normal use of his mental or physical faculties by reason of the introduction of
alcohol. See id. § 49.01(2)(A).

 Because Atkins's behavior must be gauged subjectively, indicators of his aberrant
behavior may be susceptible to multiple explanations. Atkins seeks to explain his erratic behavior
by claiming severe fatigue. Defendants in other DWI cases have likewise attempted to explain
away physical impairment by attributing it to other sources. See State v. Williams, 814 S.W.2d
256 (Tex. App.--Austin 1991), aff'd, 832 S.W.2d 52 (Tex. Crim. App. 1992) (motion to suppress
blood test granted because red eyes and slurred speech may have been due to either alcohol or car
accident); Haskins v. State, 960 S.W.2d 207, 209 (Tex. App.--Corpus Christi 1997, no pet.)
(evidence of intoxication was sufficient despite defendant's alternative explanation that he had a
bad knee and diabetes); Reagan v. State, 968 S.W.2d 571, 572 (Tex. App.--Texarkana 1998, pet.
ref'd) (defendant not entitled to have State prove his normal behavior before putting on evidence
of physical or mental impairment). 

 The State cites a line of cases, however, that it claims stands for the proposition that
a defendant who allows his physical condition to deteriorate to the extent that he is more
susceptible to alcohol than normal cannot claim this synergistic effect as a defense to intoxication. 
See Sutton v. State, 899 S.W.2d 682 (Tex. Crim. App. 1995); Heard v. State, 665 S.W.2d 488
(Tex. Crim. App. 1984); Miller v. State, 341 S.W.2d 440 (Tex. Crim. App. 1960); Kessler v.
State, 125 S.W.2d 308 (Tex. Crim. App. 1938).

 In Kessler, the defendant acted intoxicated and smelled of whiskey after a car
accident, but denied that her behavior could be attributed to whiskey because she had taken several
tablets of amytal. A doctor testified that amytal was a sedative and has the same effect as whiskey. 
In upholding the verdict of guilty, the Court of Criminal Appeals stated "[a] person who gets
himself in a condition whereby he may become intoxicated from a lesser quantity of whiskey than
it would ordinarily take to produce intoxication is nevertheless intoxicated from the use of
whiskey." Kessler, 125 S.W.2d at 309. (6)

 In Miller, a conviction for DWI was affirmed despite a showing that the defendant's
blood alcohol concentration was only .04. See Miller, 341 S.W.2d at 442. The Court of Criminal
Appeals relied on both the testimony of a toxicologist regarding the presence and effect of
phenobarbital in the defendant's blood and the precedent established in Kessler for the proposition
that the defendant's lowering of his tolerance through the ingestion of phenobarbital could not be
used as a defense to intoxication. See id. at 441-42.

 In Heard, the Court of Criminal Appeals held the trial court did not err in
instructing the jury that it could convict defendant for DWI upon finding that her intoxication was
due to either liquor alone or to the combination of liquor and drugs. See Heard, 665 S.W.2d at
489. The contested instruction stated: "You are further instructed that if a Defendant indulges
in the use of drugs to such an extent that he thereby makes himself more susceptible to the
influence of intoxicating liquor than he otherwise would have been and by reason thereof becomes
intoxicated from the recent use of intoxicating liquor, he would be in the same position as though
his intoxication was produced by the use of intoxicating liquor alone." Id. Once again, the court
relied upon Kessler in reaching its decision. See id.

 Finally, in Sutton, the Court of Criminal Appeals granted petition expressly to
determine whether a jury charge on the synergistic effects of alcohol and drugs authorized a
conviction when the information alleged only intoxication by alcohol. See Sutton, 899 S.W.2d
at 683. Sutton claimed his intoxication was due to the drug Klonopin. A forensic expert testified
that Klonopin caused drowsiness, and that drinking two beers in conjunction with the ingestion
of Klonopin would very likely make an individual "appear to be intoxicated on alcohol." Id. The
court held that Heard was dispositive; the charge "when read carefully, allowed conviction only
if the jury found that appellant had been intoxicated with alcohol, either alone or in combination
with a drug that made him more susceptible to the alcohol." Id. (emphasis in original). The court
emphasized that the charge still required the jury to find that the intoxication resulted from
alcohol, and thus did not extend beyond the information. See id.

 This line of cases supports the State's contention that an instruction on synergy does
not necessarily allow conviction of DWI on an impermissible definition of intoxication. The State
urges that Sutton and its predecessors control the disposition of this case. We note, however, two
important differences between this precedent and the instant cause: (1) the defendant in the instant
cause alleged that fatigue, not drugs or other substances, caused his impairment; and (2) each of
the above cases contained some expert testimony linking alcohol and the additional substance
which combined to produce a synergistic effect upon the defendant's intoxication, whereas the
instant cause lacks any evidence in the record supporting the assumption that fatigue enhances the
effects of alcohol. We believe these distinctions to be significant and will address them in order.


The Statutory Categories of Intoxication

 The Penal Code, in setting out what we have called the "subjective" standard,
defines intoxication as a departure from the normal use of one's physical or mental faculties
resulting from the introduction into the body of: (1) alcohol; (2) a controlled substance; (3) a
drug; (4) a dangerous drug; (5) a combination of two or more of those substances; or (6) any other
substance. See Tex. Penal Code Ann. § 49.01(2)(A) (West 1994). Thus, in order for one to be
intoxicated, the statute clearly requires that one of the above substances, or a combination thereof,
be introduced into the body. The statute specifically ties the intoxication standard under section
49.01(2)(A) to the listed individual substances, or the synergistic effect caused by the combination
of two or more of those substances; fatigue, or any other purely natural deterioration of the body,
is not listed.

 The State relies on Sutton and its predecessors to justify the disputed instruction. 
The instruction in Sutton provides in relevant part:


You are further instructed that if a Defendant indulges in the use of Klonopin to
such an extent that he thereby makes himself more susceptible to the influence of
alcohol than he otherwise would have been, and by reason thereof becomes
intoxicated from recent use of alcohol, he would be in the same position as though
his intoxication was produced by the use of alcohol alone.



Sutton, 899 S.W.2d at 684. The instruction in the instant cause and the one in Sutton are virtually
identical; the instant instruction merely replaces "indulges in the use of Klonopin" with "allows
his physical condition to deteriorate." The significance lies in the nature of the change; the instant
instruction substitutes a natural deterioration of the body with a substance specifically provided
for in the statutory definition of intoxication. We believe that the statute circumscribes the
parameters of a "synergistic effect" instruction. Consequently, we conclude that the instruction,
as given, falls outside that permissible by statute.


Comment on the Weight of the Evidence

 Atkins contends that, in the absence of any testimony establishing a causal
connection between fatigue and alcohol that creates a synergistic effect on intoxication, it was
error to give a "synergistic effect" instruction. This is an argument that is difficult to dispel. As
previously mentioned, the instant cause is distinct from the Sutton/Kessler line of cases because
there exists no expert testimony in the record linking fatigue with alcohol to establish the
synergistic effects upon intoxication. (7) There exists in the record testimony of fatigue; similarly,
there exists evidence of Atkins's consumption of alcohol. There is an absence, however, of any
testimony on the synergistic effect between the two. 

 The instruction as given sets up a conditional; if the defendant allowed his physical
condition to deteriorate, and by this becomes intoxicated through the introduction of alcohol, then
the defendant is in the same position as if his intoxication was produced by alcohol alone. The
instruction itself is quite neutral. It never mentions fatigue, only possible physical deterioration. 
And, it requires intoxication through the introduction of alcohol, as provided by statute. 

 This is not, however, the same as saying the disputed instruction actually aided the
jury in making its determination. The disputed instruction was unnecessary and failed to clarify
matters for the jury. Worse, by referring to Atkins's physical condition in the jury charge, the
trial court authorized the State to discuss the alleged synergistic effects of fatigue upon intoxication
in its closing argument. This would be an unremarkable development should some scientific
testimony have linked the two at trial, but the record is devoid of any testimony establishing such
a synergistic effect between fatigue and alcohol. Therefore, the State was allowed to engage in
argument and speculation beyond any evidence contained in the record, attempting to convince a
lay jury from a "common knowledge" point of view. This borders on an impermissible comment
on the weight of the evidence. (8) 

 Because we believe the "synergistic effect" instruction as given falls outside the
description of substances, or combination thereof, provided by statute, and because we believe this
instruction borders on a comment on the weight of evidence, we disapprove of the instruction as
given under the facts presented in this case. We conclude that the trial court erred in charging the
jury with the instruction as given on the synergistic effect of fatigue and alcohol on intoxication.


Harm Analysis

 When reviewing error in a jury charge, article 36.19 of the Code of Criminal
Procedure contains the standards for both fundamental error and ordinary reversible error. See
Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). If the error in the charge was the subject
of a timely objection in the trial court, then reversal is required if the error is "calculated to injure
the rights of defendant." This means no more than some harm must exist to the accused from the
error. In other words, an error which has been properly preserved by objection will call for
reversal as long as the error is not harmless. On the other hand, if no proper objection was made
at the trial and the defendant must claim that the error was "fundamental," the judgment will be
reversed only if the error is so egregious and created such harm that the defendant "has not had
a fair and impartial trial." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

 Atkins objected to the jury charge at trial on grounds similar to those explicated in
his points of error before this Court. Therefore, according to Almanza, we must reverse the
conviction upon a finding of some harm attributed to error in the charge. See id. The actual
degree of harm must be assayed in light of the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, the argument of counsel and any
other relevant information revealed by the record of the trial as a whole. Id. (emphasis added). 

 To determine harm in the instant cause under the Almanza standard, we will first
review the court's charge to the jury. We initially note that the disputed instruction requires that
intoxication be found by the introduction of alcohol into the body, it just disallows a claim of
physical deterioration as a complete defense. Furthermore, in reviewing the entire charge, the
court clearly states the terms of the statute under which Atkins was charged, and defines the nature
of "intoxication" necessary for conviction strictly in terms of alcohol. The charge includes a
statement of the law: "Our statutes provide that any person who drives or operates an automobile
or any other motor vehicle in any public place in this State while such person is intoxicated shall
be guilty of Driving While Intoxicated." The charge also includes the following definitions:


"Intoxicated" means not having the normal use of physical or mental faculties by
reason of the introduction of alcohol into the body.


"Normal Use" means the manner in which the normal non-intoxicated person
would be able to use his faculties.


"Public place" means any place to which the public or a substantial group of the
public has access and includes, but is not limited to streets, highways, and the
common areas of schools, hospitals, apartment houses, office buildings, transport
facilities, and shops.



Taken as a whole, the charge clearly states the proper statutory standard to be applied by the jury.

 We will next review the state of the evidence. Because no objectively verifiable
standard was available to determine whether Atkins was intoxicated, the jury had to weigh the
available evidence, which included evidence of Atkins's physical condition. In fact, Atkins
himself put his physical condition at issue in the trial by attempting to explain away his erratic
behavior as a result of extreme fatigue. The jury was free to accept Atkins's argument that his
behavior, which may have resembled intoxication, was actually fatigue. We have already stated
that the jury charge, when read as a whole, correctly instructed the jury on the statutory
requirements for conviction. The instruction did not preclude the jury from finding that fatigue,
rather than alcohol, caused Atkins's aberrant behavior. However, the jury was also free to make,
and did make, the opposite conclusion. 

 We further note that the record contained undisputed evidence of intoxication which
could not be explained away by Atkins's claim of fatigue. Atkins admitted drinking multiple beers
at a poker party. Moreover, his fatigue cannot explain his failure of the HGN test, the odor of
alcohol in the car and on his breath, his bloodshot eyes, or other incriminating evidence apparent
at the time of the stop. Even believing Atkins to be fatigued, and that the fatigue caused some of
the aberrant behavior as attested to by Atkins's witnesses, the jury had ample evidence of
intoxication to convict Atkins for DWI. 


CONCLUSION

 Though we believe the instruction as given was error, Almanza cautions us to look
to the entire jury charge and the state of the evidence. As we have earlier explained, the statute
and its relevant definitions were clearly included in the charge, such that the jury was twice
charged that a conviction must be based upon the ingestion of alcohol alone. Furthermore, we
look to the evidence, which includes many indicia of intoxication not explained away by Atkins's
claim of fatigue. We therefore hold that, even though the trial court erred in instructing the jury
on the synergistic effect of fatigue and alcohol on intoxication, the error was ultimately harmless. 
We affirm the conviction.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: February 11, 1999

Publish

















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. See Tex. Penal Code Ann. § 49.04 (West 1994).
2. Appellant originally briefed nine points of error, but at oral argument conceded his first two
concerning alleged error in admitting videotape due to the binding precedent established in
Gassaway v. State, 957 S.W.2d 48 (Tex. Crim. App. 1997).
3. The HGN test measures the involuntary jerking of the eyes of a subject by holding the
subject's gaze on a stimulus, often a flashlight or pen. The jerking of the eyes is greatly enhanced
by the introduction of alcohol into the body. See Emerson v. State, 880 S.W.2d 759, 763-770
(Tex. Crim. App. 1994).
4. A careful reading of the disputed portion of the trial court's instruction reveals that neither
fatigue nor its synergistic effect with alcohol upon intoxication was expressly mentioned. 
However, the instruction was argued by counsel in such a manner, both at trial and before this
Court.
5. We do not use the term "subjective" here to imply any arbitrariness in the application of the
§ 49.01(2)(A) standard or any dependency upon the perceptions of the particular observer. 
Rather, "subjective" is merely used in contradistinction to the scientific verifiability, or
"objectivity," of a .10 blood alcohol concentration. We recognize that both 49.01(2)(A) and
(2)(B) require intoxication to be measured against a single, objective standard, either .10 or
"normal use."
6. We note that in Kessler the court charged the jury that if they believed from the evidence that
appellant was intoxicated from the use of amytal, or if they had a reasonable doubt thereof, to
acquit her. Kessler, 125 S.W.2d at 309.
7. Each of the State's cited cases contains expert testimony regarding the synergistic effects of
alcohol and a specific drug or chemical: Kessler, 125 S.W.2d at 309 (doctor); Miller, 341 S.W.2d
at 441 (toxicologist); Heard, 665 S.W.2d at 489 (doctor); and Sutton, 899 S.W.2d at 684 (forensic
expert). Expert testimony is generally required on issues of causation except where determination
of an issue falls plainly within the knowledge possessed by ordinary laypersons. See Hood v.
Phillips, 554 S.W.2d 160, 164 (Tex. 1977) ("unless the mode or form of treatment is a matter of
common knowledge or is within the experience of the layman, expert testimony will be required
to meet this burden of proof"); Flores v. Center for Spinal Evaluation and Rehabilitation, 865
S.W.2d 261, 264 (Tex. App.--Amarillo 1993, no writ) ("proximate cause cannot be established
by mere guess or conjecture, but must be proved by evidence of probative force").
8. Article 36.14 of the Texas Code of Criminal Procedure, entitled Charge of Court, states in
relevant part: 


Subject to the provisions of article 36.07 in each felony case and in each
misdemeanor case tried in a court of record, the judge shall, before the argument
begins, deliver to the jury, except in pleas of guilty, where a jury has been waived,
a written charge distinctly setting forth the law applicable to the case; not expressing
any opinion as to the weight of the evidence, not summing up the testimony,
discussing the facts or using any argument in his charge calculated to arouse the
sympathy or excite the passions of the jury.


Tex. Code Crim. Proc. Ann. art. 36.14 (West 1981) (emphasis added).


Powers*

Affirmed

Filed: February 11, 1999

Publish

















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. See Tex. Penal Code Ann. § 49.04 (West 1994).
2. Appellant originally briefed nine points of error, but at oral argument conceded his first two
concerning alleged error in admitting videotape due to the binding precedent established in
Gassaway v. State, 957 S.W.2d 48 (Tex. Crim. App. 1997).
3. The HGN test measures the involuntary jerking of the eyes of a subject by holding the
subject's gaze on a stimulus, often a flashlight or pen. The jerking of the eyes is greatly enhanced
by the introduction of alcohol into the body. See Emerson v. State, 880 S.W.2d 759, 763-770
(Tex. Crim. App. 1994).
4. A careful reading of the disputed portion of the trial court's instruction reveals that neither
fatigue nor its synergistic effect with alcohol upon intoxication was expressly mentioned. 
However, the instruction was argued by counsel in such a manner, both at trial and before this
Court.
5. We do not use the term "subjective" here to imply any arbitrariness in the application of the
§ 49.01(2)(A) standard or any dependency upon the perceptions of the particular observer. 
Rather, "subjective" is merely used in contradistinction to the scientific verifiability, or
"objectivity," of a .10 blood alcohol concentration. We recognize that both 49.01(2)(A) and
(2)(B) require intoxication to be measured against a single, objective standard, either .10 or
"normal use."
6. We note that in Kessler the court charged the jury that if they believed from the evidence that
appellant was intoxicated from the use of amytal, or if they had a reasonable doubt thereof, to
acquit her. Kessler, 125 S.W.2d at 309.
7. Each of the State's cited cases contains expert testimony regarding the syner