NO. 12-04-00245-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
ROBERT LEWIS WILLICH,                            §                 APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            In three issues, Appellant Robert Lewis Willich challenges his conviction for felony driving
while intoxicated. We affirm.
 
Background
            On September 8, 2003, Appellant was indicted for driving while intoxicated on July 5, 2003. 
The indictment alleged that Appellant had previously been convicted of DWI on February 24, 1993
and October 5, 1995. An enhancement paragraph in the indictment also alleged that Appellant had
been convicted of felony burglary of a habitation on March 5, 2001. 
            Appellant was subsequently tried before a jury, was sentenced to 18 years of imprisonment,
and was assessed a $4,000.00 fine. In three issues, Appellant now challenges the jury’s finding of
“guilty” on the DWI charge.
 
Legal and Factual Sufficiency of the Evidence
            In his first and second issues, Appellant contends that the evidence was legally and factually
insufficient to support his conviction for DWI.


 The State argues that the evidence adduced at trial
was legally and factually sufficient to support the verdict. 
Standard of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.–San Antonio 1999, pet. ref’d). The standard for reviewing a legal sufficiency challenge
is whether any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to
the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. 
A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing
court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            There is only one question to be answered in a factual sufficiency review, and that is
“[c]onsidering all of the evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt?” Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). There
are two ways in which the evidence may be insufficient. First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. 
Id. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. 
Id. Weighing all the evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond a reasonable doubt standard could not have been met, so the guilty verdict
should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be
factually insufficient under a beyond a reasonable doubt standard. Id.
 
Applicable Law
            A person commits an offense if the person is intoxicated while operating a motor vehicle in
a public place. Tex. Pen. Code Ann. § 49.04 (Vernon 2003). “Intoxicated” is defined as 
 
(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol,
a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,
or any other substance into the body; or
 
(B) having an alcohol concentration of 0.08 or more.


Tex. Pen. Code Ann. § 49.01(2)(A), (B) (Vernon 2003). A witness does not have to be an expert
to testify that a person he observes is intoxicated by alcohol; therefore, lay opinion testimony by a
police officer that a person is intoxicated is probative evidence that a person was “drunk.”
Henderson v. State, 29 S.W.3d 616, 622 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d.). 
The Evidence
            Texas Department of Public Safety Trooper Brent Davis testified that at about 10:50 p.m. on
July 5, 2003, he was traveling on State Highway 334 between Seven Points, Texas and Gun Barrel
City, Texas. He drove up behind a vehicle traveling with its right tires on the improved shoulder,
which is outside the white line separating the shoulder from the main driving lane. When the vehicle
applied its brakes, Davis noticed that the vehicle had a defective brake light because the light “wasn’t
very visible at all.” Both of these circumstances caused Davis to turn on his overhead lights to stop
the vehicle. At the time Davis turned on his lights, the vehicle was turning into CC Rumors, a
nightclub in Seven Points. Davis also saw that the driver of the vehicle was drinking something out
of a can.
            Davis exited his vehicle and identified the driver of the vehicle as Appellant. He looked in
Appellant’s vehicle and saw a Natural Light beer can sitting in the floorboard on the driver’s side. 
Davis also smelled a strong odor of alcoholic beverages emanating from the interior of the vehicle. 
When Davis asked Appellant for his driver’s license and proof of insurance, Appellant was
“fumbling through his wallet” and was unable to locate his driver’s license, so he handed the wallet
to Davis. Davis looked through the wallet and found a black and white copy of Appellant’s driver’s
license. Davis thought Appellant’s conduct was abnormal because most people can present some
identification from a wallet fairly quickly. Davis also thought that Appellant’s conduct was an
indication that his mental faculties may have been diminished.
            Davis asked Appellant to exit his vehicle. When Appellant got out of the vehicle, Davis saw
that Appellant was walking in a “staggered manner,” which also indicated that Appellant may not
have had normal use of his mental and/or physical faculties. Appellant was wearing dark colored
sunglasses at night, and Davis asked him to remove them so that he could properly administer the
horizontal nystagmus gaze test (“HGN”). Appellant began having trouble performing the test
because he could not concentrate on Davis’s finger; instead, Appellant kept looking at Davis when
Davis’s finger was at maximum deviation. Davis also noticed that Appellant had a lack of smooth
pursuit in his eyes, meaning that Appellant’s eyes were “jerking and bouncing” as they looked from
side to side. Davis saw that Appellant also had distinct nystagmus at maximum deviation, which
Davis described as an involuntary jerking of the eyes while looking to the extreme left or right. 
Appellant exhibited a third clue of intoxication when Davis noticed Appellant’s eyes having an onset
of nystagmus prior to Davis’s finger being placed at a 45-degree angle from Appellant’s eyes. In
Davis’s opinion, Appellant exhibited six clues (three in each eye) of intoxication based on his
performance during the HGN test. 
            When Davis demonstrated the walk and turn test and asked Appellant to perform the test, he
stated that Appellant “turned around, put his hands behind his back and said, ‘Take me to jail.’” 
This statement indicated to Davis that Appellant believed he was intoxicated and was willing to go
to jail at that point. In order to give Appellant the benefit of the doubt and perform more testing,
Davis asked Appellant to recite the alphabet. Appellant attempted to recite the alphabet, but
“mumbled through Q, R, S” and never finished reciting the remainder of the alphabet. Davis asked
Appellant if he was finished reciting the alphabet, and Appellant told Davis that he was finished. 
            Davis then asked Appellant to blow into a portable breath tester in order to obtain a sample
of Appellant’s blood alcohol content, but Appellant refused to submit a sample. Davis proceeded
to place Appellant in custody for driving while intoxicated and put him in the back of Davis’s patrol
car. Davis then went to perform an inventory of the contents of Appellant’s car; this search yielded
numerous empty beer cans in the floorboard area. As he was performing the inventory, he heard a
“muffled noise” coming from the patrol car. When Davis arrived back at the patrol car, he found
Appellant “screaming and saying the handcuffs were really hurting and using some choice language.” 
Davis believed that Appellant’s mood swing was caused by his intoxication. Davis also believed
that Appellant was intoxicated because he did not have the normal use of his mental and physical
faculties.
            When Davis and Appellant arrived at the Gun Barrel City Police Department, Davis
requested that Appellant submit to an intoxilyzer test to determine his blood alcohol content. 
Appellant refused this request. 
            On cross examination, Davis stated that different physical handicaps could cause a person
to fail the walk and turn test and to exhibit nystagmus in the eyes. Davis said that he did not take
Appellant’s medical history at the time he questioned him. He also testified that the only way to
definitely determine a person’s blood alcohol content would be through a blood or breath test and
that Appellant did not have these tests administered. 
            Appellant testified on his own behalf and stated that he has a learning disability that required
special education in grade school and that he also underwent speech therapy until the seventh grade. 
When he was 18, Appellant failed both the written and performance portions of the driving tests and
was unable to obtain a driver’s license until he passed the tests after taking them a second time. 
Appellant stated that he tends to weave in and out of a lane if he does not keep his eyes “straight on
the road.” 
            On July 5, 2003, Appellant had worked until 4:30 in the afternoon and cashed his paycheck
before going home. He then took his son and one of his son’s friends swimming at a local lake until
9:00 or 9:30. When darkness arrived, Appellant, his son, and his son’s friend went to McDonald’s
for ice cream and then went to Wal-Mart to buy beer and Dr. Pepper before going home. Appellant
stated that he dropped his son off at his house and went to Sonic in Seven Points “because there was
no food in the house.” He testified that he pulled into the parking lot at CC Rumors because he had
passed the Sonic and a police car was behind him with the overhead lights on. 
            Appellant said that he had probably weaved over onto the improved shoulder because he
“sometimes just don’t pay attention.” He knows all of his “ABC’s,” but sometimes gets nervous and
forgets the letters. He was nervous on the evening of July 5 when Davis pulled him over because
he gets “nervous in front of anybody that has authority.” 
            Appellant acknowledged that he had pleaded “guilty” on February 24, 1993 and October 5,
1995 to misdemeanor DWI charges and that he therefore had two prior DWI convictions. He
testified that he does not have any problems with alcohol but likes to drink beer on occasion. 
Appellant stated that on the evening of July 5, he had consumed only one beer before Davis pulled
him over. He did not take the breath test Davis offered him because he had consumed the beer
shortly before Davis pulled him over and he was afraid that the test would “register positive.” 
            On cross examination, Appellant acknowledged that he had been charged with felony
burglary of a habitation and was placed on probation for ten years. He also acknowledged that he
had been charged with another DWI in 1997 in McLennan County and was sent to Substance Abuse
Felony Punishment Facility (“SAFPF”) for almost one year. After Appellant left SAFPF and was
on probation for the burglary charge, he was charged with DWI in Smith County. Appellant’s
probation was subsequently revoked and he was sent to prison for three years.
            Appellant stated that he had an astigmatism in his eyes and that the sunglasses he was
wearing on the evening in question were prescribed to him by a doctor. He said that he could see
fine at night and denied that sunglasses would make everything appear darker at night. 
Analysis
            Davis observed Appellant drinking an alcoholic beverage while driving and smelled alcohol
emanating from Appellant’s vehicle. He testified that Appellant’s erratic behavior and failure of the
field sobriety tests led him to believe that Appellant did not have the normal use of mental or
physical faculties by reason of the introduction of alcohol. Accordingly, the jury could have found
the essential elements of driving while intoxicated beyond a reasonable doubt. 
            The only contrary proof of Appellant’s intoxication was Appellant’s own testimony. He
stated that he was not intoxicated on the evening in question, but that he was acting strangely
because he was nervous. Appellant also stated that an astigmatism caused his eyes to exhibit clues
of nystagmus. 
            The jury heard the evidence, determined the credibility of the witnesses, and chose to believe
the State’s evidence over that provided by Appellant. After weighing all the evidence, including
Davis’s testimony, we cannot say that Appellant’s evidence that he was not intoxicated is strong
enough that the beyond a reasonable doubt standard could not have been met by the State on the
driving while intoxicated charge. 
            We hold that the evidence was both legally and factually sufficient to support Appellant’s
conviction for DWI. Accordingly, Appellant’s first and second issues are overruled.
 
Admissibility of Videotape Evidence
            In his final issue, Appellant maintains that the trial court erred by allowing a videotape to be
published to the jury that showed Appellant submitting to the HGN test and “giving testimonial
evidence without administration of the Miranda warnings.”


 The State argues that the trial court did
not err by allowing the videotape to be admitted into evidence.
Standard of Review
            In reviewing the admission of evidence, this court follows an abuse of discretion standard
of review. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The test for abuse
of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate
case for the trial court's action; rather, it is a question of whether the court acted without reference
to any guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990).
Analysis
            Appellant argues that the trial court should not have allowed the videotape into evidence
because it showed Appellant performing the sobriety tests before he was given his Miranda
warnings. The State argues that field sobriety tests are not testimonial in nature; therefore, Miranda
does not apply. We agree with the State’s contention.
            Texas jurisprudence firmly dictates that the results of field sobriety tests are not testimonial
evidence that implicate Miranda. See Gassaway v. State, 957 S.W.2d 48, 50-51 (Tex. Crim. App.
1997). In fact, the trial court would have committed reversible error if it had excluded the videotape
on Miranda grounds. See id. Appellant’s third issue is overruled.
Conclusion
            The evidence adduced at trial was legally and factually sufficient to support Appellant’s
conviction for driving while intoxicated. Furthermore, the trial court did not err by admitting the
videotape depicting Appellant performing the HGN test. 
            The judgment of the trial court is affirmed.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered November 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.















(DO NOT PUBLISH)